(No. 6741.   July 1, 1940.)

BEATRICE O'NIEL, Respondent, v. MADISON LUMBER & MILL COMPANY, a Corporation, Employer, and GENERAL CASUALTY COMPANY OF AMERICA, a Corporation, Surety, Appellants.

[105 Pac. (2d) 194.]

Verner R. Clements and E. B. Smith, for Appellants.

Durham & Hyatt and M. Casady Taylor, for Respondent.

HOLDEN, J.—Appellant Madison Lumber and Mill Company, a Washington corporation (hereinafter called the Company), was engaged in the business of repairing and remodeling buildings at Orofino, Idaho, and Ted O'Niel was what is called a "professional" shingler. May 31, 1938, the company contracted with one Jack Crabb to remodel and recondition a building owned by him and located in the town of Orofino. The remodeling included a new shingled roof.

June 19, 1938, at about 9:30 A. M., while shingling, O'Niel fell off the roof, sustaining injuries from which he died the next day. February 7, 1939, Beatrice O'Niel, his widow, filed a claim for compensation with the Industrial Accident Board. March 3, 1939, the company filed what is designated a denial of claim for compensation. April 3, 1939, claimant filed an application for hearing. Thereafter appellants filed an "Answer to Claimant's Application for Hearing," which was followed by a "Further and Separate Answer and Defense" in which it is stated O'Niel was an independent contractor and not an employee of the company; that the deceased and the company "entered into a contract . . . . whereby it was agreed that the said Madison Lumber & Mill Company would furnish all materials necessary to shingle the roof of the said Jack Crabb property and that the said Ted O'Niel would furnish all labor and tools necessary for the performance of the work and the completion of the shingling within the time limited in the general contract, for the agreed price of $2 per square to be paid upon the completion and the acceptance of the work; that pursuant to the agreement of the parties, the said Ted O'Niel executed his written agreement therefor in words and figures as follows, to wit:

" 'Madison Lumber & Mill Co., Orofino, Idaho.

" 'June 16, 1938.

" 'I hereby contract to reshingle approximately eleven squares on the Jack Crabb residence for the amount of $2.00 per square. I will furnish all necessary labor. The Madison Lumber Company to furnish all necessary material. I also release the Madison Lumber and Mill Company from all liability and damages whatsoever in case of accident or injury suffered by myself or any of my employees while I am working on this contract.

" '(Signed)   TED O'NIEL.' "

Respondent did not file an affidavit denying the genuineness and due execution of the above-quoted paper. July 7, 1939, respondent's claim for compensation was heard at Orofino. July 26, 1939, findings of fact and rulings of law were made and filed. On the same day the board awarded respondent compensation, from which award this appeal was prosecuted.

■ Appellants urge respondent admitted the genuineness and due execution of the above-quoted paper in that she failed to make and file an affidavit denying its genuineness and due execution, and, therefore, that she cannot recover compensation, citing section 5–704, I. C. A., of our Code of Civil Procedure, which provides:

"When the defense to an action is founded on a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file with the clerk within ten days after receiving a copy of the answer, an affidavit denying the same, and serve a copy thereof on the defendant."

Appellants contend the provisions of that section apply to proceedings before the Industrial Accident Board. It formed a part of our 1881 Practice Act. When enacted, its provisions could not have been intended to apply, and were not intended to apply, and have never been applied, to proceedings before the Industrial Accident Board. Moreover, that our legislature, in the enactment of the Workmen's Compensation Law many years later, did not intend section 5–704, *supra,* should apply to procedure before the board is made clear in that it expressly abolished all civil actions and remedies (secs. 43–902, 43–1003, I. C. A.) of employees against employers "and all jurisdiction of the courts of the state over such" remedies in order that quick, "sure and certain relief for injured workmen and their families and dependents" might be "provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation," and that the "processes and procedure under this act shall be as summary and simple as reasonably may be" (sec. 43–1401, I. C. A.).

And furthermore, our Workmen's Compensation Law makes no provision for pleadings of any character, either complaint, cross-complaint, counterclaim, demurrer, answer, or separate answer and defense—therefore, the so-called "separate answer and defense" has no legal status whatever. It is the province of the legislature, and not the litigant, to prescribe practice and procedure. Suppose, for instance, respondent had filed a complaint, instead of a notice of injury and claim for com-

pensation, and appellants failed to either demur or answer within the time required in civil actions, could it be seriously contended respondent would be entitled to have a default entered? We think not.

It is strenuously insisted the deceased was an independent contractor and not an employee of the Company, and, consequently, claimant was not entitled to recover compensation.

The negotiations leading up to shingling the roof of the Crabb building were had between O'Niel and the Company's Orofino manager. Whatever the understanding was, it was reached by them. Of course, O'Niel did not testify, and the manager's testimony is very evasive. Nevertheless, there is substantial competent evidence to support the award of the board. Briefly, the record shows:

There were approximately eleven squares of shingles to be laid; O'Niel was to be paid $2 per square; the Company agreed to and did supply all the material; Crabb, the owner of the building, fully instructed the Company's manager how he (Crabb) wanted the shingles laid, and the manager gave such instructions to O'Niel; the day after O'Niel's death, to wit, June 21, 1938, the very manager who had negotiated with O'Niel gave respondent a draft for the sum of $50, which read "In payment of *labor* by Ted O'Niel" (italics ours), and while the manager attempted an explanation, it apparently was not accepted by the board, which heard him testify. The draft, in and of itself, tended to prove the relationship of employer and employee between O'Niel and the Company.

The 1937 session of the legislature (Sess. Laws 1937, chap. 175, p. 288) amended sections 43–1408, 43–1409 and 43–1413, I. C. A. In addition to providing an appeal could be prosecuted from a final order or award of the Industrial Accident Board direct to this court, it provided that:

"Upon hearing [on appeal] the court may affirm or set aside such order or award but mäy set it aside only upon the following grounds, and shall not set the same aside on any other or different grounds, to-wit:

(a) That the findings of fact are not based on any substantial, competent evidence.

(b) ........

(c) ........

(d) ........''

Finally, appellants contend the finding of the board deceased was employed for a year prior to June, 1938, and was earning an average weekly wage of $25, ''is not based upon competent evidence nor upon any showing required by I. C. A., Section 43–1118, as amended by S. L. 1935, Ch. 129, p. 304.''

Respondent testified, without objection, as follows: She and decedent were married in November, 1935; at all times during their marriage deceased was ''engaged in the occupation of carpentering and shingling and painting;'' deceased was engaged in such occupation all of the year 1937; the family moved from Rupert, Idaho, to Orofino, Idaho, about the first of March, 1938, and that deceased worked at such occupation after the family moved to Orofino; deceased had steady work up to just about the time of his death; she knew what his average weekly earnings were and that they were between $25 and $35; deceased brought his earnings home every week; she knew by what he brought home what he was earning and that his earnings were averaging from $25 to $35 a week.

Section 43–1118, *supra,* as amended, reads as follows:

''Average weekly wages where the workman has worked substantially every week in the year, shall be computed in such a manner as is best calculated to give the average weekly earnings of the workman during the 12 months preceding his injury; . . . . ''

In *McNeil v. Panhandle Lumber Co.,* 34 Ida. 773, 790, 203 Pac. 1068, the injured workman went to work on the 15th day of January, 1920, and was injured on the 20th day of January, 1920. With reference to weekly earnings, we held:

''Appellants urge that the evidence is insufficient to sustain the award of $12 per week to respondent. That is sufficiently answered by the fact that all the evidence in the record bearing upon the wages earned by respondent prior to his injury is that the lumber company was paying him at the rate of

60¢ per hour, or $28.80 per week.    This is sufficient to support the award made by the board.''

It follows from what has been said the award must be affirmed, and it is so ordered, with costs to respondent.

Ailshie, C. J., Budge and Givens, JJ., concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing nor participate in the decision of this case.

Petition for rehearing denied.