(No. 7059. March 2, 1943.)

ALFRED LEONARD DYRE, Respondent, v. KLOEPFER AND CAHOON, Employers, and IDAHO COMPENSATION COMPANY, Surety, Appellants.

[134 Pac. (2d) 610.]

Spencer Nelson and Ralph S. Nelson for appellants.

E. B. Smith for respondent.

HOLDEN, C.J.—April 3, 1942, claimant entered the employ of Kloepfer & Cahoon as a carpenter. His work consisted of making frames for sidewalks and curbings. In making the frames, claimant was on his knees much of the time. While so at work, he testified: "I bumped my knee—I think on a rock." This occurred in the forenoon. In the afternoon his right knee began to pain him severely, but he continued to work until 5:00 o'clock p. m. Monday morning, April 7, claimant returned to work and worked all day. Tuesday morning he called his employer and told him he was unable to work. April 11, 1942, claimant consulted a physician. April 15, he consulted another physician. May 26, 1942, claimant filed a notice of injury and claim for compensation. June 22, 1942, respondent's claim for compensation was noticed for hearing for July 2, 1942, and on that day the matter was heard by the board. July 8, 1942, the board made Findings of Fact and Rulings of Law and entered an award thereon in favor of the claimant. August 5, 1942, Kloepfer and Cahoon and their surety appealed to this court from the award.

The principal contention of the parties revolves around the question as to whether claimant suffered personal injury by "accident" within the meaning of Sec. 43-1001, I. C. A., as amended (Session Laws, 1939, p. 286). Sec. 43-1001, supra, as amended, provides:

"Section 1. Sec. 43-1001, Idaho Code Annotated, is hereby amended to read as follows:

"43-1001. Right to Compensation for Injury. If a workman receives personal injury *caused* by *an* accident arising out of and in the course of any employment covered by * * * *the workmen's* compensation law his employer or the surety shall pay compensation in the amounts and to the person or persons hereinafter specified.

"'*Accident*', *as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law.*

"The terms '*injury*' and '*personal injury*', *as the same are used in this law, shall be construed to include only an*

*injury caused by an accident, as above defined, which results in violence to the physical structure of the body. The said terms shall in no case be construed to include an occupational disease in any form and only such non-occupational diseases as result directly from an injury."*

Claimant testified:

"Q. On April 3, 1942, will you relate what work you were doing at that time?

"A. I was setting forms for sidewalks.

\* \* \*

"Q. Will you tell us briefly how you were performing that work?

"A. Well, in setting those curved sidewalks, we generally use this upright lumber to make the curves, and you more or less have to get down on your knees to do them, to hold them in place, and I was on my knees at the time I was injured.

\* \* \*

"A. \* \* \* I was on my knees getting the forms lined up and some way or other I bumped my knee—I think on a rock.

\* \* \*

"A. The right knee on the inside."

And the board made the following findings of fact:

"That on said 3rd day of April, 1942, claimant was engaged all day in making frames for sidewalks and curbing to be installed at a dwelling then under construction by his employer near the City of Boise in Ada County, State of Idaho; that in making and placing said frames, said claimant was on his knees much of the time and his knees thus came in contact with gravel and pebbles at the place where said work was being done; that during the afternoon of said day, claimant's right knee began to pain him severely, but he continued with his work until the end of his shift at 5:00 o'clock in the afternoon; that in the evening of that day claimant noticed that his right knee was somewhat swollen and he continued to suffer with pain in his knee during that night; that the 4th and 5th day of April, 1942, fell on Saturday and Sunday which were days on which claimant was regularly off work; that on said

two days claimant remained at home in bed much of the time because of pain in his right knee; that on Monday morning, April 6, claimant returned to his regular work, though suffering from pain in his knee, and worked throughout that day; that on Tuesday morning, April 7, the pain in claimant's right knee was so severe that he was unable to work and at that time he called his employer and told him that he was unable to work that day; that claimant's pain and disability for work continued and on the 9th day of April claimant again telephoned to his employer and told him that he was still unable to work because of an injury which he had sustained to his right knee while working on April 3, 1942, as hereinbefore described."

\* \* \*

"That at all times since the 6th of April, 1942, claimant has been and now is totally disabled for work because of the ruptured semi-lunar cartilage in his right knee; that such condition of claimant's right knee was caused by and is the result of work done by him on April 3, 1942, as hereinbefore described, and is the result of a personal injury by accident arising out of and in the course of claimant's employment on April 3, 1942."

■ It will be noticed the board found the "condition of claimant's right knee was caused by and is the result of the *work* done by him on April 3, 1942" [emphasis ours], and that the board further found, in effect, the condition of claimant's right knee was "the result of a personal injury by accident arising out of and in the course of claimant's employment on April 3, 1942", which is simply and purely a conclusion of law.

■ The law cast the burden upon claimant to prove he suffered a personal injury by *accident* arising out of and in the course of his employment. And, to satisfy that requirement of the law, the above-quoted testimony was adduced to the effect that while claimant was at work on his knees "getting the frames lined up" he bumped his knee "some way or another"—he stated, he thought on a rock. The board failed, as the Findings of Fact disclose, to make a finding on the vital question as to whether or not claimant suffered a personal injury by *accident* arising out of and in the course of his employment, as he claimed and offered that testimony to prove. On this point (failure of the board to find on an important question of fact), we

direct attention to In Re MacKenzie, 54 Ida. 481, 490, 491, 492, 33 P. (2d) 113. In that case one of the important questions of fact was as to what caused MacKenzie to go over to a nearby pump and pit where he slipped in and shortly thereafter died from the injuries sustained—whether curiosity or fulfillment of some duty he owed his employer—as to which the board failed to make a specific finding and concerning which this court said:

"This brings us down to the gist of the whole situation. What was the object or purpose of Mr. MacKenzie going to the pump and pit at the time when he met with the accident. Why did he go there? If he went there merely to satisfy his own curiosity the claimant cannot recover. On the other hand, if he went there to perform some act or duty that someone else should have done, or what he might reasonably do while in the performance of his duty in the furtherance of his master's business, his dependents can recover. The board failed to make a specific finding as to this most important fact, which it should have done, as to why MacKenzie went to the pit when he was injured, if the evidence is sufficient upon which such a finding can be made, and from the record we believe the evidence is sufficient to justify such a finding, either one way of the other. True, the board in finding number VII, above quoted, found that MacKenzie met his death by accident arising out of and in the course of his employment, which is but an ultimate conclusion of both law and fact, which might have been sufficient providing sufficient specific facts had been found. But in this case the specific fact which is controlling was not found by the board [as in the case at bar]. The board is a fact-finding body; it heard and saw the witnesses when they testified, and examined the premises, and it was and is its duty, when such can be done under the evidence, to make the necessary specific findings of fact which are controlling."

Furthermore, it is the duty of the board, and not the court to make findings of fact and rulings of law [Sec. 43-1404, I. C. A.]. On appeal from orders of the Industrial Accident Board, this court can review only questions of law. [Sec. 9, Art. 5, Idaho Const., as amended by 1935 S. L., p. 377, 1937 S. L., p. 498.] We can neither weigh the evidence nor make findings of fact.

The order of the board is, therefore, reversed and the cause remanded with directions to the board to make a

specific finding of fact on the question as to whether claimant sustained a personal injury by *accident* arising out of and in the course of his employment, within the meaning of the above-quoted amendment and conclude accordingly. No costs awarded.

Ailshie, Givens, and Dunlap, JJ., concur. Budge, J., sat at hearing but did not participate in the decision.