(No. 7056. March 25, 1943.)

LINDA B. MADARIAGA, Surviving widow of Joseph R. Madariaga, Deceased, on her own behalf and on behalf of Verna Lee Hewitt Madariaga, and Mary Jo Madariaga, minor children, all dependents of Joseph R. Madariaga, Deceased, Appellant, v. DELAMAR MILLING CORPORATION, Employer, and STATE INSURANCE FUND, Surety, Respondents.

[135 Pac. (2d) 438.]

E. B. Smith for appellant.

Frank L. Benson for respondents.

AILSHIE, J.—November 24, 1938, Joseph R. Madariaga, then aged 26, entered the employ of respondent, Delamar Milling Corporation, as a laborer in its reduction plant in Owyhee county. In May, 1939, he married Linda B. Hewitt, appellant herein, who was divorced and had a child. October 12, 1940, Mary Jo Madariaga was born. Although the Hewitt child was never adopted by Madariaga, he took care of and supported and treated it "Just the same as [his] own"; and it became one of his dependents. In November, 1940, Madariaga went to Portland to have an operation for "ulcers of the stomach" and was operated on by Dr. Steinberg. About January 20, 1941, he returned to work for the milling company and worked "fairly continuously" to June 15, 1941. The superintendent of the company stated that Madariaga "wasn't in as good health after his trip to Portland as he was before." About ten days prior to June 15, 1941, Madariaga and a fellow employee indulged in a friendly wrestle and "pushed each other around", after which Madariaga complained of his back hurting him. June 15th, while in the course of his employment as "flotation tank operator" at the mill, he "slipped and fell", striking the middle of his back against "the corner of [the] reagent feeder", which stood about four feet from the floor and was "Made out of ten-gauge iron; . . . . light iron—about

four by four." He laid off work for a week, going back June 22. July 28, in the course of his employment, Madariaga

"stooped to lift a sack of soda ash to the feeder, putting one hand under the sack, the other on the top corner, and brought it up as far as his waist, and then with his body turned sideways heaved the sack up the rest of the way and set it up-right on the feeder; that at that time he felt pain to the left of the middle of his back."

Madariaga was a man five feet eleven inches in height and his normal weight was 165 pounds; after the accident, June 15, he started losing weight.

In about twenty days he returned to work, doing welding, lighter work than he had done before; after five days he had to quit in the middle of the day on account of pain in his back. Examination was made by several physicians and about September 8 or 9, 1941, he was hospitalized. The physicians who consulted over the case, prior to the death of the patient, appear to have been uncertain and undecided as to just what was the basic trouble, although they pronounced it Marie-Strumpell disease (Dorland's Medical Dictionary, p. 789). They were agreed, however, on the cause of death after receiving the report from Dr. Steinberg, a specialist of Portland, who had operated on Madariaga, November 28, 1940, and diagnosed the case as "Multiple metastatic carcinomatous invasions of regional lymph nodes . . . . Chronic peptic ulcer with diffuse sclerosing type of carcinoma."

Claim for compensation death benefits was filed January 6, 1942, by Linda B. Madariaga, surviving widow, on her own behalf and on behalf of the two minor children. The two injuries sustained by decedent (June 15 and July 28, 1941) were reported to the board June 18 and July 29, '41, respectively. Application for hearing was filed with the board April 16, 1942, and the matter came on regularly for hearing May 15. July 1, 1942, the board entered an order denying claim for compensation and dismissing claimant's petition. From that order, claimant has appealed to this court.

Appellant opens the argument in the written brief with the following statement:

"Essentially, the only point of law involved in this case is whether the evidence is insufficient to sustain the

order of the Industrial Accident Board denying compensation death benefits to appellant."

It is therefore conceded by both appellant and respondents, that the only material question to consider is the sufficiency of the evidence to sustain the order of the board.

The facts above stated in this opinion are undisputed. In addition thereto nine physicians and surgeons testified in the case, with reference to Madariaga's condition and the cause of his death.

The controversy really evolves about the contention on the one hand, that the accidents above recounted resulted in blows to Madariaga's body and "aggravated and accelerated" the cancerous condition and hastened his death; while, on the other hand, it is contended that they had no effect on the cancerous condition, one way or the other, in causing Madariaga's death.

Of the nine doctors who testified, three testified in substance that, in their opinion, the traumas aggravated and accelerated the cancerous process and hastened his death. On the other hand, six of these physicians testified in substance: "I do not believe the injury had anything to do with aggravating his condition at all . . . It is not probable it had anything to do with his ultimate demise." The several witnesses were examined and cross-examined at great length and in detail; some of them saw the patient and consulted with the attending physician during his lifetime; others testified purely in response to hypothetical questions.

We do not deem it necessary or practical, to recite in this opinion the testimony of the various expert witnesses. It is sufficient to say, that there was a material and substantial conflict in the expert opinions.

The board had the opportunity of seeing these several witnesses, hearing them examined and cross-examined, and noting their familiarity or lack of familiarity with the case and the subject concerning which they were testifying. *Fackenthall v. Eggers Pole & Supply Co.*, 62 Ida. 46, 51, 108 P. (2d) 300.) After hearing and considering the whole case, the board made very detailed findings, of which the following is the concluding and decisive part, and accordingly denied the claimant any relief:

## "VII.

"That on October 31, 1941, said Joseph R. Madariaga died of carcinomatosis due to carcinoma of the stomach . . .

## X.

"That the carcinomatosis which caused the death of said Joseph R. Madariaga, on the 31st day of October, 1941, as hereinbefore described was not a true bone cancer and was not caused by nor in any manner aggravated, accelerated, or affected by either the wrestling done by him in the early part of June, 1941 or by the striking of Madariaga's back against the reagent feeder on June 15, 1941, or the lifting and heaving of the hundred pound sack of soda ash on July 28, 1941; that said occurrences did not aggravate, accelerate, or affect the growth or development of said carcinomatosis in any manner and did not cause, accelerate, hasten, or in any manner contribute to the death of said Joseph R. Madariaga, and that his death was not caused by, nor hastened by, any injury by accident arising out of and in the course of his employment with the defendant, DeLamar Milling Corporation."

In view of the fact that the burden of proof was upon the plaintiff to establish her case by a preponderance of the evidence and the further rule, that we can not disturb an award where there is any substantial evidence to support it (*Fackenthall v. Eggers Pole & Supply Co.*, supra), we are constrained to hold that the evidence justifies and supports the order of the board.

We may observe, that the case of *Cole v. Fruitland Canning Assn.*, (Ida.) 134 P. (2d) 603, is not controlling here, for the reason that the board found and held "that said occurrences did not aggravate, accelerate, or affect the growth or development of said carcinomatosis in any manner"; so that the provisions of Sec. 43-1123, as enacted by Chap. 155, 1941 Sess. Laws, p. 310, has no application to this case.

Affirmed.

Holden, C.J., Givens and Dunlap, JJ., concur.