(No. 7075. March 26, 1943.)

MARIE E. JENSEN, surviving widow of Joseph C. Jensen, deceased, Appellant, v. BOHEMIAN BREWERIES, INC., Employer and IDAHO COMPENSATION COMPANY, Surety, Respondents.

[135 Pac. (2d) 442.]

E. B. Smith and Clarence L. Hillman for appellant.

Spencer Nelson for respondents.

HOLDEN, C.J.—In November, 1934, Joseph C. Jensen, now deceased, entered the employ of respondent, Bohemian Breweries, Inc., as a truck driver, delivering beer and malt products in the city of Boise, Idaho and vicinity. The beer was delivered in half barrels weighing about two hundred pound each, and in quarter barrels weighing slightly over one hundred pounds each, and in cases weighing about forty-three pounds each. The deceased was a large, strong and apparently healthy man weighing about two hundred

sixty-five pounds. He loaded the half barrels of beer from a loading platform at the brewery onto a delivery truck by placing them against his body and allowing the barrels to roll down his abdomen and legs to the ground. Sometimes he loaded and unloaded the case beer by carrying a case under one arm, and at other times by carrying a case under each of his arms. His employment with respondent, Bohemian Breweries, Inc., continued until noon August 13, 1941. On at least two occasions in 1940 he was treated by a physician for a condition diagnosed as "chronic appendix and bowel block," and recovered from such condition in from two to three days with no apparent ill effects. In August, 1940, he suffered another attack of appendicitis and was again treated by a physician and in two or three days recovered from the second attack. For some two to three days prior to the thirteenth day of August, 1941, Jensen complained to co-employees about not feeling well. During the forenoon of that day he was engaged in the delivery of cases of beer, not barrels. While making such deliveries, he complained to his boss, who was riding with him, of not feeling well. He said he felt like he had gas on his stomach. He chewed "Tums" and refrained from drinking beer and said he had refrained from drinking beer for two or three days on account of the condition of his stomach. At noon, Jensen went to his home and complained to his wife he was "sick and tired," ate no dinner and lay down and rested until about two o'clock in the afternoon, when he drove his wife to a beauty parlor and returned to his home. At about four o'clock that afternoon, a taxi driver arrived at the beauty parlor and informed Mrs. Jensen her husband was at home very ill. Mrs. Jensen went home immediately, where she found Jensen suffering excruciating pain. He was at once placed in a hospital under the care and attention of Dr. O. P. Hamilton, the physician who had attended him in previous attacks, and who operated on the deceased the morning of August 14, 1941, finding Jensen had a "ruptured appendix, and a mass of inflammatory tissue adherent to the abdominal wall, and he had a general peritonitis." He never regained consciousness and died August 15, 1941. The cause of death was general peritonitis due to a ruptured appendix.

Claim for compensation by his widow, Marie E. Jensen, was filed with the board July 21, 1942. No agreement for compensation having been reached, the matter was set

down for hearing and heard by the board commencing September 9, 1942. September 11, 1942, findings of fact and rulings of law were made and the following order entered thereon.

"WHEREFORE IT IS ORDERED, AND THIS DOES ORDER, that Marie E. Jensen, claimant, take nothing by these proceedings against the defendants, Bohemian Breweries, Inc., employer, and Idaho Compensation Company, surety, or either of them, and that her claim for compensation herein be, and the same hereby is denied and her application dismissed."

From that order claimant prosecuted an appeal to this court.

Appellant insists that "where a weakened, abnormal or diseased condition of a workman is aggravated, or a new lesion is accelerated, by accidental injury arising out of and in the course of his employment, compensation must be paid for his resulting incapacity, including death; nor will a showing of disease, abnormality or previous weakness of the injured part defeat the right to compensation where the injury aggravates and accelerates the previous weakness or disease and results in death."

This contention presents the question: Was the diseased condition of decedent's appendix accelerated and his appendix ruptured, causing death, by an accident arising out of and in the course of his employment?

Upon the trial of the cause before the board, appellant called the family physician, Dr. O. P. Hamilton. In substance, and briefly stated, Dr. Hamilton testified: That the deceased had for sometime prior to the alleged accident, "appendix trouble"; that he believed the handling of the kegs of beer "would have a great tendency to exaggerate an appendiceal condition"; that the handling of the kegs "*could* very easily contribute a lot to the termination of this ruptured appendix"; that "the injury *could* attribute a whole lot of material condition in that it *could* cause a ruptured appendix"; that at the time he performed the operation on the deceased, he "never even thought of a traumatic condition there"; that

"Q. To reframe the question I just gave you—taking into consideration the facts which I have related in the hypothetical question and the findings as disclosed by you actually operating upon Mr. Jensen, do you entertain the

opinion which you have stated a while ago in Mr. Jensen's case, that his appendix having ruptured as it did was of traumatic origin or contributed to traumatically?

"A. I would say it was *possible* it was. *I don't believe I could definitely say it was due to that, but there is a possibility that it could be.*

\* \* \*

"A. I have seen him [referring to the deceased] the way he handled those kegs of beer and he would roll them on his abdomen and I believe that it would be a contributing factor to exaggerate or exacerbate the chronic appendix condition, or abscessed condition. *I don't want to say it was or it wasn't, because I don't know;*

\* \* \*

"Q. With reference to your statement that taking into consideration the condition which you found upon opening up Mr. Jensen, you couldn't tell whether it was of probable traumatic origin, the acute exaggeration, but taking into account the entire history which has been related to you —his work and the manner of handling the barrels on his abdomen, taking those additional factors into consideration, Doctor, does it alter the opinion which you just expressed on cross examination?

"A. I say just the same as I did before, that there is a possibility that this could have caused this ruptured appendix—I say it was a possibility.

"Q. Would it be likely, Doctor?

"A. Yes, it *could* be. It would be likely if he had the abscess and he got a blow on the abdomen, it *could* rupture it." (Emphasis ours.)

The burden was upon claimant to prove the deceased suffered a personal injury by accident arising out of and in the course of his employment, causing death. (*Brooke v. Nolan,* 59 Ida. 759, 761, 87 P. (2d) 470, 471; Estate of Puckett, 59 Ida. 529, 84 P. (2d) 566; *Parkison v. Anaconda Copper Min. Co.,* 56 Ida. 610, 57 P. (2d) 1216; *Webb. v. Gem State Oil Co.,* 56 Ida. 465, 55 P. (2d) 1302; *Carlson v. F. H. DeAtley & Co.,* 55 Ida. 713, 46 P. (2d) 1089; *Vaughn v. Robertson & Thomas,* 54 Ida. 138, 29 P. (2d) 756; *Strouse v. Hercules Min. Co.,* 51 Ida. 7, 1 P. (2d) 203; *Larson v. Ohio Match Co.,* 49 Ida. 511, 289 P. 992; *Hawkins v. Bonner County,* 46 Ida. 739, 271 P.

327; *Walker v. Hyde,* 43 Ida. 625, 253 P. 1104.) Furthermore, there must be a probable, not a possible, connection between cause and effect (*Brooke v. Nolan,* supra) to constitute an accident "arising out of and in the course of employment."

While Dr. Hamilton testified the alleged injury claimed to have been suffered by the deceased would "likely" rupture his appendix, the Doctor also testified he did not know whether handling the kegs of beer contributed to the rupture of decedent's appendix; that it was *possible,* but the Doctor did not testify it was probable. It is the province of the board to weigh the evidence. We can pass on questions of law only (Sec. 9, Art. V, Idaho Const., as amended by 1935 S. L., p. 377, 1937 S. L., p. 498).

This court is firmly committed to the rule that where, as in the case at bar, the findings of the board are supported by substantial, competent evidence, the same will not be disturbed. (*O'Neil v. Madison Lumber and Mill Co.,* 61 Ida. 546, 551, 105 P. (2d) 194, 196; *Knight v. Youngkin,* 61 Ida. 612, 621, 105 P. (2d) 456, 459; *Golay v. Stoddard,* 60 Ida. 168, 89 P. (2d) 1002; *Potter v. Realty Trust Co.,* 60 Ida. 281, 90 P. (2d) 699; *Rand v. Lafferty Transportation Co.,* 60 Ida. 507, 92 P. (2d) 786; *Brink v. H. Earl Clack Co.,* 60 Ida. 730, 96 P. (2d) 500; *Totton v. Long Lake Lumber Co.,* 61 Ida. 74, 97 P. (2d) 596.)

The order of the board is affirmed, with costs to respondents.

Ailshie, Givens and Dunlap, JJ., concur.