(No. 7212. June 26, 1945.)

ERIC C. CAMERON, as Guardian of the Estate of Alan Caverhill Cameron, a minor, Claimant-Appellant, v. BRADLEY MINING COMPANY, a corporation, Employer, and STATE INSURANCE FUND, Surety, Defendants-Respondents.

[160 Pac. (2d) 461.]

Fred M. Taylor and E. B. Smith for appellant.

Paul C. Keeton and Walter M. Oros for respondents.

HOLDEN, J.—On and prior to March 26, 1942, respondent Bradley Mining Company maintained, as a part of its operations, a boarding house or dining hall for the con-

venience and use of any of its employees who chose to avail themselves thereof; the boarding house was conducted in a clean and sanitary manner, and its meats were kept in a refrigerator in the company's store nearby and from there brought to the boarding house as needed; on the 26th of March, 1942, and for approximately twelve years prior thereto Martha May Cameron was afflicted with diabetes mellitus; during all of said time she was on a diabetic diet controlled by insulin, which she was accustomed to administer to herself; on said date and for sometime prior thereto Martha May Cameron was in the employ of respondent, Bradley Mining Company, at its office at Stibnite, doing clerical and stenographic work; on and for many years prior to March 26, 1942, she was a married woman living with her husband, Eric C. Cameron, and was the mother of a minor child, Alan Caverhill Cameron, the child on whose behalf the claim herein was filed, born July 15, 1933. Martha May Cameron lived with their son in a house approximately three miles from the company's office at Stibnite, and because of the poor condition of the roads and of the inconvenience of traveling home for lunch, she was accustomed to and did eat her noon lunch at the above mentioned dining hall and did so March 26, 1942. At about 5:30 p.m. of that day, after returning home from her work, Mrs. Cameron complained of feeling ill; she lay down on a couch without eating dinner and shortly thereafter undressed and went to bed; immediately after going to bed she vomited and her condition appeared to become worse; a nurse employed by the Bradley Mining Company was called to attend her; when the nurse arrived Mrs. Cameron was vomiting and gave the nurse a history of having had diarrhea; the nurse stayed with her a short time, then left, returning at 9:30 p.m.; at that time, Mrs. Cameron was quite nauseated and was vomiting. A sedative was given her and she slept at intervals until about 4:30 a.m., at which time she got up and walked to the bathroom; she was very weak and shortly after she returned to bed she lapsed into a coma; on the morning of March 28, Dr. Heitmann of Cascade went by plane to Stibnite to attend Mrs. Cameron; when the doctor arrived and examined her, he found her in a coma, her pulse was quite weak and very fast, her eyeballs were soft and there was an indication of an acetone odor to her breath. The patient was taken by plane to a hospital at Cascade, where she was given intra-

venous fluids and insulin; after Mrs. Cameron returned home from her work on Thursday, March 26, 1942, until her arrival at the hospital on Saturday, March 28, no insulin was administered to her; at about three o'clock the following morning (March 29, 1942) she suddenly died. Thereupon an autopsy was performed by Dr. Kenneth A. Heitmann, but no chemical analysis of the contents of the stomach of the deceased was made.

February 1, 1944, after due proceedings in the Probate Court of Ada County, Idaho, Eric C. Cameron was appointed guardian of the estate of Alan Caverhill Cameron, minor, and thereupon qualified and entered upon the discharge of his duties as such guardian.

February 19, 1944, Eric C. Cameron as such guardian and for and on behalf of the said minor filed a claim with the Industrial Accident Board for compensation on account of the death of Martha May Cameron. No agreement regarding compensation having been reached between claimant and respondents, claimant filed an application for hearing in the office of the Industrial Accident Board. Pursuant to such application a hearing was had at Cascade, Valley County, Idaho, commencing May 17, 1944, where some evidence was adduced and the hearing then adjourned to Boise, where further evidence was adduced. June 26, 1944, findings of fact and rulings of law were made to the effect that Mrs. Cameron did not die as the result of having eaten poisoned food, and the following order was then entered thereon:

"WHEREFORE IT IS ORDERED, AND THIS DOES ORDER, That the claim of the claimant, Eric C. Cameron, be and hereby is denied and his application dismissed."

July 21, 1944, claimant appealed to this court from the order.

At the hearing before the board claimant endeavored to prove, by expert testimony, Mrs. Cameron died as the result of eating poisoned food, and respondents endeavored to prove, also by expert testimony, she died from diabetes mellitus. Dr. Kenneth A. Heitmann, general practitioner, not a specialist in diabetes, testified, in response to a long, detailed hypothetical question, that in his opinion Mrs. Cameron died from food poisoning. On the other hand,

Dr. Helen Craig, a specialist in pathology, testified, in response to a lengthy hypothetical question, she died of diabetes. Dr. Heitmann was subjected to a searching, withering, neutralizing cross-examination, after which he again stated his opinion to be Mrs. Cameron died from food poisoning, and Dr. Craig also and finally, at the conclusion of a like cross-examination, again expressed the opinion Mrs. Cameron died from diabetes. The board found against claimant.

"We can pass on questions of law only." (*Jensen v. Bohemian Brew., Inc.*, 64 Ida. 679, 684; Sec. 9, Art. V, Idaho Const., as amended by 1935 S.L., p. 377, 1937 S.L., p. 498.)

And

"In compensation cases, claimant has the burden of proving his case by a preponderance of the evidence." (*Benson v. Jarvis*, 64 Ida. 107, 112, 127 P. (2d) 784; *Madariaga v. Delamar Mill. Corp.*, 64 Ida. 660, 665, 135 P. (2d) 438; *Jensen v. Bohemian Brew., Inc.*, 64 Ida. 679, 683, 135 P. (2d) 442; *Stroscheim v. Shay*, 63 Ida. 360, 374, 120 P. (2d) 267.)

While in *Cain v. C. C. Anderson Co.*, 64 Ida. 389, 408, 409, 133 P. (2d) 723, we held, and to which holding we adhere:

"More weight must be given to the testimony of the expert who testified from first hand knowledge gained on autopsy examination than to the testimony of one whose knowledge is based only upon hypothetical facts."

We, nevertheless, also held:

"Members of the board (Industrial Accident) are triers of facts, *final judges* of weight and credence to be given opinion of experts hypothetically stated," citing many decisions of this court. (Emphasis added.)

In *O'Neil v. Madison Lumber & Mill Co.*, 61 Ida. 546, 551, 105 P. (2d) 194, this court pointed out:

"The 1937 session of the legislature (Sess. Laws 1937, chap. 175, p. 288) amended sections 43-1408, 43-1409 and 43-1413, I.C.A. In addition to providing an appeal could

be prosecuted from a final order or award of the Industrial Accident Board direct to this court, it provided that:

" 'Upon hearing (on appeal) the court may affirm or set aside such order 'or award but may set it aside *only* upon the following grounds, and *shall not set the same aside on any other or different grounds,* to-wit:

" '(a)   That the finding of fact are not based on *any* substantial, competent evidence.   (Emphasis added.)

" '(b)   . . . .

" '(c)   . . . .

" '(d)   . . . ."   (Cited and followed in *Bower v. Smith,* 63 Ida. 128, 135, 118 P. (2d) 737.)

In the case at bar, the testimony of Dr. Heitmann, who testified in behalf of claimant, together with other facts and circumstances appearing in the record, might very well lead one to the conclusion Mrs. Cameron died from food poisoning.   On the other hand, the testimony of Dr. Helen Craig, who testified in behalf of respondents, together with other facts and circumstances appearing in the record, might also very well lead one to the conclusion she died from diabetes mellitus.   Where, then, as in the instant case, the facts and circumstances disclosed by the record

"are such as might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character, the findings of the triers of fact should prevail."   (*Estate of Randall,* 58 Ida. 143, 146, 70 P. (2d) 389, citing numerous decisions of this court.)

We come now to claimant's contention:

"The *second* factor in the unforeseen and untoward causation of events contributing to Mrs. Cameron's death (the first, being, it is contended, she ate poisoned food during the noon meal) was what may be termed to be the accidental failure, under the circumstances, of the resident nurse to properly and timely administer insulin to the patient.   There is no desire on the part of appellant to in anywise attack the act of the resident nurse in failing to

administer insulin to Mrs. Cameron, even though the latter requested it. The fact nevertheless remains that, such failure or omission constituted a direct factor in causing the diabetes, afflicting Mrs. Cameron, to become uncontrolled, which resulted in the precipitation of death from diabetic toxemia. This accidental feature of the case, likewise, was an act or omission of the employer, because committed by the employer's agent."

There is no merit in the contention the failure of Miss Green, respondent Bradley Mining Company's nurse, to administer insulin to Mrs. Cameron was "a direct factor in causing the diabetes, afflicting Mrs. Cameron to become uncontrolled, which resulted in the precipitation of death from diabetic toxemia," in this: claimant's expert witness, Dr. Heitmann, testified:

"Q. So that Miss Green, the nurse, her act in not administering insulin on Friday night and the next day after Mrs. Cameron took sick, although Mrs. Cameron asked for it would be—would that be in accordance with the proper treatment as nurses are trained?

"A. It is absolutely the thing they are trained and told to do."

The order of the Board must be affirmed, and it is so ordered, with costs to respondents.

Ailshie, C.J., Givens, J., and Buckner, D.J., concur.