245 P.2d 775

**OLIVER v. POTLATCH FORESTS,**
Inc., et al.

No. 7860.

Supreme Court of Idaho.

June 13, 1952.

46

Elder, Elder and Smith, Coeur d'Alene, for appellants & cross-respondents.

E. B. Smith, Boise, for defendants-respondents.

Paul C. Keeton, Lewiston, and Walter Oros, Boise, for claimant.

GIVENS, Chief Justice.

March 24, 1949, claimant, employed as choke setter by Potlatch Forests, Inc., fell about 12 to 16 feet as snow on the edge of a road where he was standing thawed and gave way. He landed on his back and shoulders and was knocked out for about ten minutes.

Dr. Pappenhagen examined him at Orofino on the 29th, took X-ray pictures and later taped his back. Dr. Pappenhagen continued to examine him and testified he

"could never find any anatomical proof for (claimant's) disability." either at the time of the accident in March, 1949, or at the first hearing July 18, 1950, except a strained back received at the time of the accident, i. e., falling, and that claimant was able to return to work June 6, 1949.

Notice of injury and claim for compensation was made by claimant March 25, 1949. Employer's report showing Workmen's Compensation Exchange as its insurer was made April 5.

Subsequently, claimant fell and cracked some ribs, contending he would not have so fallen if he had not injured his back March 24. His ribs healed and no significance appears to be attached to this incident, or to an intervening injury to his hand in a fight. He sought further medical examination and treatment and was intermittently examined and March 17, 1950, asked for a hearing by the Board for compensation. He worked infrequently in the interim, claiming he was unable to remain at steady employment because of his back.

July 28, 1950, working for the Caldwell Lumber & Box Company, Idaho Compensation Company, its insurance carrier, on the pond at Horseshoe Bend, claimant, in trying to roll with a peavy a green, 16-ft. yellow pine log 12 inches in diameter out of the chute where it was stuck, got down on his back and could hardly walk.

September 19, 1950, claimant was hospitalized in Saint Lukes, Boise, and Dr. Burton, orthopædic surgeon, after reviewing his history, taking X-rays, examining him, and taking a myelogram, diagnosed his condition as a ruptured intervertebral disc, performed a laminectomy and removed the ruptured disc and did a fusion. Claimant left the Hospital October 23, 1950.

November 3, 1950, claimant asked for a rehearing on his claim for compensation, in substance asserting the ruptured disc was caused by and continued from the accident of March 24, 1949, aggravated by the accident of July 28, 1950.

The first hearing was held by the Board July 18, 1950, at Orofino.

The second hearing was January 9, 1951, Boise.

Third, January 23, 1951, same place.

Fourth, March 16, 1951, in Spokane, Washington.

Fifth, April 19, 1951, Boise.
In addition to Dr. Pappenhagen, the following admittedly skilled physicians testified as indicated:

Dr. Lander, neurosurgeon, Spokane, from examination and case history December 8, 1949, testified to the same effect as Dr. Pappenhagen. Likewise, Dr. Wetzler, neuropsychiatrist, Spokane, examination April 11, 1950; Dr. Morris, radiologist, Boise, examined X-rays taken in March and May, 1949, found congenital defect, but no disc injury; Dr. Ward, orthopædic specialist, Boise, examined claimant and X-rays July 7, 1950, found no evidence of herniated

disc; Dr. Shaw, orthopædic specialist, Boise, examined claimant July 26, 1950, and "did not find claimant had herniated disc."

None of the above specialists took a myelogram and all testified that disparity of one-fourth inch in size of claimant's two legs, referred to as atrophy, did not prove a herniated disc existed from time of the March accident.

Dr. Burton gave as bases for his conclusions, severe muscle spasm and rigidity in claimant's lower back August 1, 1950, extending from the lower dorsal area to the sacral area and that he could not straighten up; atrophy of the right thigh and right calf, indicating pressure on a nerve supplying that leg for a considerable length of time, which would antedate July, 1950; distressing guardedness against any quick movement; limitation of movement in the back in the lumbar area; scoliosis, or deviation from the midline, bowed sidewise, not congenital, but the result of severe muscle spasm; that the myelogram confirmed the presence and location of the ruptured disc, likewise confirmed by X-rays; that at the time of the hearing at which Dr. Burton gave this testimony, January 23, 1951, claimant was surgically healed except for a period of convalescence and X-ray examination to determine the solidity of the fusion; that the disc condition could have been dormant or quiescent at times following the first accident and based his opinion that the herniated disc occurred from the injury of March 24, 1949, because of atrophy in claimant's leg and the history of recurrent pain in his back; that claimant's ability to work was strictly limited because as soon as he started to work a day or two, or at the most a week, the pain would reoccur and he would have to stop; that the X-rays taken March 29 showed an obliteration of the normal curve due to muscle spasm and list to the spine, and estimated claimant's permanent partial disability as ten to 15 percent as compared to the loss of one leg at the hip, and that while claimant would be as good as ever after the operation, it took away from his active motion, three joints in the lower part of his back, which had to be taken into account.

The other doctors were examined and cross-examined at great length and disagreed with Dr. Burton as to the emphasis he placed upon the difference in size of the two legs and for various reasons, elaborated at length, were more or less unanimous in the conclusion the ruptured disc was not caused by the first accident, but by the second.

Conceding that at the time of the operation he had a ruptured disc, it is unnecessary to delineate at greater length the highly scientific, skilled, and technical examination of the other physicians, because, conceding their analysis in their opinion, justified their conclusions, the mere fact that six physicians testified there was no connection between the first accident and

the ruptured disc found to exist and which was operated on September 19, 1950, following the July accident and only one physician testified there was a causal connection, is not controlling. Madariaga v. Delamar Milling Corp., 64 Idaho 660, at page 664, 135 P.2d 438; Knapp v. Arizona Highway Department, 56 Ariz. 54, 104 P. 2d 180; Stansell v. Tucker, 191 Okl. 377, 130 P.2d 294; Brooks & Dahlgren v. Pettigrew, 195 Okl. 550, 159 P.2d 743; Burk v. American District Telegraph Co., 160 Kan. 519, 163 P.2d 402; Liberty Mutual Ins. Co. v. Industrial Accident Commission, Cal.App., 166 P.2d 908; Pacific Indemnity Co. v. Industrial Accident Comm., Cal.Sup., 170 P.2d 18; Black, Sivalls & Bryson, Inc., v. Rhone, 199 Okl. 131, 184. P.2d 769.

Where it requires expert, scientific and professional skill to determine the cause, origin, and extent of a disability, proof thereof must be by skilled, professional witnesses. Zipse v. Schmidt Bros., 66 Idaho, 30, 154 P.2d 171; Northwest Metal Products v. Department of Labor and Industries, 12 Wash.2d 155, 120 P.2d 855; Malcolm v. State Industrial Commission, 193 Okl. 367, 143 P.2d 823; Nu-Way Laundry & Cleaners v. State Industrial Comm., 194 Okl. 101, 147 P.2d 795; E. I. DuPont De Nemours & Co., Inc., v. Spencer, 195 Okl. 300, 157 P.2d 186; Pittsburgh Plate Glass Co. v. Wade, 197 Okl. 681, 174 P.2d 378; Larson v. Department of Labor & Industries, 37 Wash.2d 263, 223 P.2d 207.

The Industrial Accident Board is the arbiter of disputed and conflicting facts and opinions of experts, and its determination—when substantially supported—may not be disturbed by this Court. Therefore, the finding and conclusion by the Board that the accident of March 24 originated the herniated disc must be sustained. Rand v. Lafferty Transp. Co., 60 Idaho 507, 92 P.2d 786; Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267; Paull v. Preston Theatres Corp., 63 Idaho 594, 124 P.2d 562; Barker v. Russell & Pugh Lumber Co., 64 Idaho 45, 127 P.2d 772; Gragg v. Cook Cedar Co., 64 Idaho 50, 127 P.2d 757; Kaonis v. Ohio Match Co., 64 Idaho 89, 127 P.2d 776; Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Cole v. Fruitland Canning Ass'n, 64 Idaho 505, 134 P.2d 603; Dyre v. Kloepfer and Cahoon, 64 Idaho 612, 134 P.2d 610; Jensen v. Bohemian Breweries, Inc., 64 Idaho 679, 135 P.2d 442; Cameron v. Bradley Mining Co., 66 Idaho 409, 160 P.2d 461; McCall v. Potlatch Forests, 67 Idaho 415, at page 419, 182 P.2d 156; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Stralovich v. Sunshine Mining Co., 68 Idaho 524, 201 P.2d 106; Warlick v. Driscoll, 68 Idaho 552, 200 P.2d 1014; Miller v. State, 69 Idaho 122, 203 P.2d 1007; Johansen v. Ferry-Morse Seed Co., 69 Idaho 275, 206 P.2d 545; Herman v. Coeur D'Alene Hardware & Foundry Co., 69 Idaho 423, 208 P.2d 167; McGee v. Koontz, 70 Idaho 507, 223 P.2d 686; Keck v. Wilson, 184 Okl. 138, 85 P.2d 757; Fid-

50

ler v. Industrial Comm., 72 Ariz. 250, 233 P.2d 457.

 There is no testimony as to the degree or extent on a percentage basis, or otherwise, of claimant's partial permanent disability, except the above testimony by Dr. Burton. The evidence is insufficient to support the Board's apportionment of 75% of 15% of the loss of a leg at the hip as due to the herniated disc and 25% thereof due to a congenital anomaly, because while there was testimony that a congenital anomaly existed, there was no appraisal thereof on a percentage or comparative basis; likewise, there was no testimony apportioning 85% of such 75% partial disability to the first accident and 15% to the second. The cause must, therefore, be remanded for the Board to take evidence to determine the correct percentages and responsibility therefor. Watkins v. Cavanagh, 61 Idaho 720, 107 P.2d 155; McCall v. Potlatch Forests, supra; Special Indemnity Fund of State of Oklahoma v. Hunt, Okl.Sup., 190 P.2d 795; Special Indemnity Fund of State of Oklahoma v. Wright, Okl.Sup., 191 P.2d 194.

The award against the Caldwell Lumber & Box Mfg. Company and Idaho Compensation Company, if any, should be at the rate of $20 a week in accordance with the amendment of then Section 43–1113, I.C.A., 1949 Session Laws, Chapter 212, page 448 at page 450, such amendment being in effect at the time of the second accident.

The order making the award is, therefore, reversed and the cause remanded for further proceedings in accordance herewith. Costs to appellant Oliver against appellant Workmen's Compensation Exchange and cross-respondents and Idaho Compensation Company, in proportion to the amount as ultimately found by the Board the two accidents bear to claimant's permanent partial disability; if not divided, costs against the employer and insurer liable.

PORTER, TAYLOR, and THOMAS, JJ., and SUTTON, District Judge, concur.