371 P.2d 256

Clawson F. ANDRUS, Employee, Claimant-Respondent,

v.

BOISE FRUIT & PRODUCE COMPANY, Employer, Defendant-Appellant,

and

The Aetna Casualty and Surety Company, Surety (as of May 10, 1958), Defendant-Respondent,

and

State Insurance Fund, Surety (as of May 22, 1961), Defendant-Appellant.

No. 9103.

Supreme Court of Idaho.

May 2, 1962.

Coughlan & Imhoff, Boise, for defendants-appellants.

J. F. Martin, C. Ben Martin, Boise, for defendant-respondent.

Z. Reed Millar, Millar, Callister & Marsh, Boise, for claimant-respondent.

KNUDSON, Justice.

Respondent, Clawson F. Andrus, who became 62 years of age October 29, 1961, has been employed by appellant, Boise Fruit & Produce Co., since May 24, 1951, during the greater part of which time his work involved heavy lifting.

On November 9, 1956, Andrus sustained a comparatively minor accidental injury, principally involving his left ankle and foot. He lost no compensable time; however, he did, shortly thereafter, for the first time experience some low back symptoms.

On May 10, 1958, while working with a lift truck, Andrus suffered a severe injury when two stacks of crated vegetables accidentally fell upon him, causing him injury to his left foot and ankle, ribs, neck and lower back. As a result of the injury he was hospitalized for a time and was disabled from work until September 27, 1958. Thereafter he intermittently suffered low back pains of varying degree of severity, for which he and his wife administered home remedies to ease the pain. As a result of this injury a summary and award was filed by the employer's surety, respondent The Aetna Casualty and Surety Company (hereinafter referred to as the Aetna) and a compensation agreement was entered into on February 26, 1959, which was approved by the Industrial Accident Board on the following day.

After returning to his work on September 27, 1958, he did not consult a physician until March 11, 1961, at which time he experienced such severe pain as to disable him for work. Following some treatment he returned to work on March 27, 1961.

On May 22, 1961, while delivering produce and doing heavy lifting he suffered such severe pain that he ceased work and again consulted a physician. On the following day he returned to work and continued working the remainder of that week. He again consulted a physician on May 29, 1961, and was hospitalized the following day and so remained until June 6, 1961. Andrus returned to work on July 24, 1961, but within two hours he developed acute pain in his back and was taken to the doctor's office. On that date he was again hospitalized and a myelogram revealed two protruding discs which were removed by a laminectomy operation on June 27, 1961.

Respondent, the Aetna, was surety for the employer, Boise Fruit & Produce Co. from January 1, 1957 until January 1, 1959, when appellant, State Insurance Fund, became surety.

The petition for hearing here involved, filed July 25, 1961, names both sureties as defendants. After hearing upon said petition the Industrial Accident Board entered its order awarding respondent Andrus total temporary disability compensation from May 29 to August 30, 1961, together with medical and kindred expenses relating to his treatment subsequent to May 22, 1961, amounting to $1557.97, and directing that such payment be made by either or both appellants. This appeal is from said award.

The controversy here involved is essentially between the sureties. Respondent, the Aetna, contends that this proceeding is based on accidental injuries sustained by Andrus on May 22, 1961, while appellant, State Insurance Fund, contends that the proceeding is one for modification directed against the Aetna by reason of the accidental injury sustained by Andrus on May 10, 1958.

The assignments of error are addressed to two principal contentions (1) that the findings and award are not supported by substantial competent evidence and (2) that if Andrus suffered a compensable injury due to an accident on May 22, 1961, the Board erred in failing to apportion the liability between the two sureties here involved. Appellants challenged the sufficiency of the evidence to support the Board's finding that on May 22, 1961, Andrus suffered an injury due to an accident arising out of and in the course of his employment.

The record discloses that claimant Andrus repeatedly testified that he did not have an accident subsequent to his accident and injury on May 10, 1958. The following is a quotation from his testimony:

"Q. Over the period of time, Mr. Andrus, from 1958 on, as you lifted this produce, you would experience discomfort in your back, is that correct?

"A. At times. When I lifted real heavy stuff, I experienced more pain than usual.

"Q. With respect to this incident on the 22nd of May 1958, Mr. Andrus, that wasn't any different than it had been a number of times during your course of employment when you had been lifting, was it?

"A. No, not at the time when it first started but as I kept on lifting, it kept on getting worse.

"Q. But it was the same type of pain you had had previously?

"A. I had had the same pain.

"Q. And I believe you told counsel —your counsel, Mr. Millar—that from May of 1958 on you had no accident, as such.

"A. I wouldn't call it having an accident, myself. I have had pain when I lifted and like that and if they want to call that an accident—I don't know, but to come down and actually feel that you had had an accident, I would say, no. I have had pain when I lifted heavy stuff and like that."

No accident or injury subsequent to May 10, 1958, was mentioned by Andrus or his wife to Dr. Coughlin when they were questioned regarding claimant's history. Dr. Coughlin testified as follows:

"Q. Doctor, will you state whether or not you have made any investigation to Mr. and Mrs. Andrus as to the facts surrounding their employment and the circumstances connected with this particular difficulty of Mr. Andrus?

"A. This gentleman, Mr. Roger Williams, came to my office investigating this—Mr. Andrus's case and asked me what I thought of Mr. Andrus's injury, whether or not there was a history of any succeeding injuries and I said that I knew of none, and I stated that everything, I thought, went back to this May 10, 1958 injury, and it turned out—I mean I was made aware of the fact that there were two carriers involved here, and as I understood it, the important thing was whether or not there had been succeeding injuries, and either way, apparently, this man was covered so far as he was concerned. Apparently there wasn't—all that was important was, did he have succeeding injuries or succeeding accidents or not, or did he, himself, take it back to the May 10, 1958, injury, so I questioned him along that line, and

I felt that I had the confidence of the patient, after all, he is my patient, I have my contract with him, and so I talked to him and I asked him, do you know of any succeeding injuries or accidents, or do you think it goes back to your May 10, 1958 injury, and they both felt that way, and so informed me—that it went back to the May 10, 1958 injury.

"Q. By both, you mean Mr. and Mrs. Andrus?

"A. He and his wife, yes."

It must be conceded that claimant's testimony strongly supports appellant's contention that claimant had no accident resulting in injury subsequent to May 10, 1958. However, there is evidence which may be considered as support for a finding that an accident and injury occurred on May 22, 1961. Such evidence is contained in a written statement prepared by a representative of the Aetna bearing date July 10, 1961, which bears the signature of Mr. Andrus. In this connection Mr. Andrus testified as follows:

"Q. Do you remember making a statement to this gentleman sitting here?

"A. Yes, he came out to the house.

"Q. You made a statement to him?

"A. I did.

"Q. You signed it—you read it?

"A. I didn't read it, no, I was laying flat in bed. I asked him to read it and he read it and I signed it.

"Q. You knew what was in it?

"A. So far as what he read—I signed what he read. I didn't read it."

The portion of such statement relied upon as supporting the finding that Mr. Andrus had an accident on May 22nd is as follows:

"On or about May 21, 1961 in morning while driving truck delivering produce, I was lifting a 100 lb. bag of potatoes from truck onto ground to one of the stores in town, do not recall the exact store, however I did get a terrific pain in low back area right across the back and down right hip and right groin."

The foregoing quoted statement was not made under oath and as explained by Andrus while testifying, was not made with any intent to convey the impression that he had had any kind of an accident on the day mentioned. The written statement referred to also contains the following:

"Ever since my May 10, 1958 back injury and legs I have had off and on dull and sharp pains come and go when I do heavy lifting, only got worse in May 21, it got real bad back in March. My present condition is a

reoccurrence [recurrence] of 1958 injury. My heavy lifting in May 1961 was same as in the past. My back is not much better."

The Board admittedly relied upon opinion evidence of Dr. Coughlin, the only medical witness called, in arriving at a conclusion as to the cause or causes of Mr. Andrus' lumbar spine malady. The doctor testified that if on May 22, 1961, Mr. Andrus suffered a sudden and terrific pain in his back while in the act of lifting a 100 lb. sack of potatoes it would cause him to think that there was an additional injury at that time. The word "sudden" was not used by Mr. Andrus, either in the written statement or his testimony in describing what took place on May 22. In fact Mr. Andrus, while testifying, denied that he had a "sharp" or "terrific" pain on that day. The following is an excerpt from his testimony in that regard:

"Q. Now, on the 21st of May—

"A. In was the 22nd—21st come on a Sunday—it was the 22nd.

"Q. You really had an incident of sharp pain?

"A. When I was unloading.

"Q. Can you answer me, yes or no, on that question?

"A. I had a pain, yes.

"Q. I mean a sharp pain.

"A. Not exactly a sharp pain, no.

"Q. It wasn't? What were you doing?

"A. I was unloading—delivering my delivery.

"Q. What were you delivering?

"A. I had everything on, from potatoes, tomatoes, lettuce, cabbage, carrots—everything in the produce line.

"Q. Would you call that a terrific pain?

"A. I wouldn't say it was terrific, no.

"Q. You wouldn't?

"A. Not at that time, not when it come on, because I worked for a week after that."

■ The only evidence in which respondent's contention finds support is the written statement signed by Mr. Andus to which we have referred, together with the change of symptoms experienced by Mr. Andrus on or about May 22, 1961. However, since our review is limited (Idaho Const., Art. 5, § 9) this Court can neither weigh the evidence nor make findings of fact. Dyre v. Kloepfer and Cahoon, 64 Idaho 612, 134 P.2d 610.

■ We have carefully studied and considered this record and although the evi-

dence is far from satisfactory to the effect that Andrus sustained an injury resulting from an accident which occurred on May 22, 1961, we are, nevertheless, unable to say that there is no substantial evidence to support the Board's finding. Potter v. Realty Trust Co., 60 Idaho 281, 90 P.2d 699.

The remaining assignments of error relate to appellant's contention that since the Board finds that there were two accidents it became the duty of the Board to determine as between the accidents the degree or percentage of claimant's disability caused by each accident. The record discloses that the Board mentioned apportionment in its decision, but did not apportion. In this connection, the Board found that:

"Andrus' accident of May 22, 1961, was not the sole cause of the herniation of his lumbar spine. Contributing thereto were pre-existing degeneration, aggravated by at least two known traumas, but it was the immediate, precipitating cause. It was the occasion which brought on the necessity for medical treatment and surgical excision."

Our attention has not been called to any competent evidence which supports the conclusion that the accident of May 22, 1961, was the only factor which brought on the necessity for medical treatment and surgical excision.

The record does not disclose that Dr. Coughlin, the only medical witness called, was requested to or did express an opinion as to what extent, if any, on a percentage basis, or otherwise, the respondent's injuries contributed to or were responsible for the total temporary disability compensation and medical and hospital expenses which are the subjects of the award made. The following are excerpts from Dr. Coughlin's testimony.

"Q. Doctor, I will ask it this way—taking into consideration what he told you in his history about the difficulty he had had with his back since 1958, and what you found on your examinations, could you probably say this was —the May 1958 occurrence was the precipitating factor in his back difficulty?

"A. Yes, I would think so.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Now we have the whole picture, don't we, Doctor, and we can look back in retrospect, and in your words, the die was cast—the die was cast back in May of 1958, wasn't it?

"MR. MARTIN: Just a moment.

"A. That has been my assumption, Mr. Coughlan, yes.

"Q. And that is your assumption now, isn't it, Doctor?

"A. Yes, I believe that that was the starting of this thing.

\* \* \* \* \* \*

"Q. Is there anything now, Doctor, looking back in retrospect, that could have been done for Mr. Andrus following the accident of May 10, 1958, that might have prevented the recurrence of this situation for which you have given him surgery?

"MR. MARTIN: I am going to object to that as assuming that this is a recurrence of a situation.

"MR. MILLAR: Well strike the word 'recurrence' if that will help— this condition as you found it at surgery, Doctor?

"A. I don't think so. I think that, as Mr. Coughlan said, it is just a gradual coming along, a culmination."

This Court has repeatedly considered and construed I.C. § 72–323, which in part provides:

"(a) If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity the employer shall be liable only for the additional disability resulting from such accident."

See Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775; Cole v. Fruitland Canning Co., 64 Idaho 505, 134 P.2d 603; Lindskog v. Rosebud Mines, Inc., 369 P.2d 580.[1] Successive back injuries were involved in Harris v. Bechtel Corporation, 74 Idaho 308, 261 P.2d 818, wherein this Court held:

"By § 72–323, I.C. the board is authorized and required to apportion the degree and duration of disability between the injury resulting from the accident and that resulting from any preexisting injury or infirmity. Hanson v. Independent School Dist., 50 Idaho 81, 294 P. 513; Cole v. Fruitland Canning Co., 64 Idaho 505, 134 P.2d 603; Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171. As recognized in the Cole case, this statute contemplates the apportionment of hospital and medical expenses as well as other forms of compensation."

█ It is clear that the principal issue presented to the Board was whether claimant sustained compensable injuries as a result of an accident occurring on or about May 22, 1961. Evidence tending to support or deny apportionment was not in-

1. Ante, p. 160.

**254**

troduced by the parties. This Court has repeatedly held that:

"where the parties fail to produce satisfactory evidence upon any question of fact material and necessary to the decision of the case, then, * * * 'It becomes the duty of the board to make full and exhaustive inquiry * * *, and to that end the board may not only examine any competent witness at the conclusion of his direct and cross examination upon all matters material and relevant to any issue, but it may also subpoena and examine other competent witnesses.'" Lay v. Idaho State School, 64 Idaho 455, 133 P.2d 923; Dehlin v. Shuck, 63 Idaho 620, 124 P.2d 244; Nistad v. Winton Lumber Co., 59 Idaho 533, 85 P.2d 236.

A determination of the question as to whether apportionment should be made is material and necessary to the decision of this case.

We, therefore, conclude that this cause should be remanded to the Industrial Accident Board with direction that it hear and consider such evidence as it deems proper to enable it to determine what apportionment, if any, pursuant to I.C. § 72–323 should be made of the award granted. It is so ordered. Costs to appellant.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.