(No. 7216. December 21, 1944.)

GEORGE ZIPSE, Employee, Respondent, v. SCHMIDT BROTHERS, Employers, and FIREMAN'S FUND INDEMNITY COMPANY, Surety, Appellants.

[154 Pac. (2d) 171.]

Willis C. Moffat and E. B. Smith for appellants.

Frank F. Kimble for respondent.

GIVENS, J.—Respondent, 26 years old, was employed by Schmidt Brothers in their logging operations as a landing man. July 9, 1943, while releasing logs in connection with the choker, he was struck on his back by a cat's jerking a cable across the back in the vicinity of the hips, the

cable slid up his back in the region of the groin or the small of the back, and he was forced to some extent under the log. The cable again struck him across the back in the neighborhood of the shoulder and forced him face down on the log, and again struck him in a general manner parallel with the spine from a point near the neck and downward from the neighborhood of the neck to the coccyx. He was taken to the hospital, where he remained six days. X-rays taken revealed no fractures but disclosed contusions on his back and an arthritis or osteoarthritis of the sacro-iliac joints and lumbar region.

Respondent gave a history of having had occasional pains in his back for the past two years, although he had lost no time from work, having engaged in farming while not working on logging operations. Respondent has been unable to do any work since the accident and was totally disabled at the time of the hearing because of a general stiffening of the spine, pain and soreness in that region and in his chest and abdomen, and inability to expand his chest in breathing.

Compensation was paid until March 24, 1944, when appellants denied further liability, claiming respondent's continuing condition of total disability was due to the pre-existing arthritis and not the result of the accident.

Under sec. 43-1123, added 1941 S. L., ch. 155, p. 310[1], the board found that respondent's permanent disability resulting from said accident was equivalent to 80% of the loss of one leg at or above the knee where stumps remain sufficient to permit the use of an artificial limb and ordered that compensation be paid him therefor. (43-1113, I.C.A.)

---

[1]"43-1123. Deductions for Pre-Existing Injuries and Infirmities.—Except as provided in Sec. 43-1111 I.C.A.

(a) If the degree or duration of disability resulting from an accident is increased or prolonged because of a pre-existing injury or infirmity the employer shall be liable only for the additional disability resulting from such accident.

(b) Any compensation previously paid an injured workman for permanent disability to any member or part of his body shall be deducted from the amount of compensation provided for the permanent disability to the same member or part of his body caused by a change in his physical condition or by a subsequent accident."

Appellant contends there is no substantial evidence in the record supporting such finding on the basis that Dr. Hopkins, who treated respondent at the time of the accident and took X-rays, testified respondent's arthritis, being progressive, would have increased regardless of the accident, and gave no percentage of the disability attributable to the accidental injury, and that Drs. Grieve and Adams, orthopedic specialists, and Dr. Anderson, specializing as a diagnostician in internal medicine, of Spokane, in their depositions estimated the disability due to the accidental injury at no more than 10% of the loss of the leg at the hip; also, the arthritic condition causing a complete ankylosis of the spine was diagnosed by the specialists as rheumatoid arthritis or Marie-Strumpell's disease, affecting young people, and progressing to the point where respondent's spine is almost rigid and that the X-rays showed he probably had been afflicted with this condition beginning about two years before the accident; that it was generally considered that this type of disturbance was of metabolic origin, in other words, a disease, and that the same would not be materially or lastingly affected by the accidental injury.

■ Where a situation such as this has to be determined by medical testimony, the opinion of experts is substantive evidence, and the basis for award must rest upon and be supported by such testimony. (*Brooke v. Nolan*, 59 Ida. 759, 87 P. (2d) 470; *Fackenthall v. Eggers Pole & Supply Co.*, 62 Ida. 46, 108 P. (2d) 300; *Pacific Employers Ins. Co. v. Industrial Accident Comm.*, 47 Cal. App. (2d) 494, 118 P. (2d) 334; *Alaska Packers' Ass'n. v. Industrial Accident Comm.*, 1 Cal. (2d) 250, 34 P. (2d) 716; *Cole v. Fruitland Canning Ass'n.*, 64 Ida. 505, 134 P. (2d) 603; *Maryland Casualty Co. v. Industrial Accident Com'n.*, (Cal.), 148 P. (2d) 95.)

■ On the other hand, findings of fact of the board if supported by substantial, probative, though conflicting, evidence may not be disturbed except for errors of law.

As opposed to the testimony of the above physicians, Dr. White, who likewise examined respondent and the X-rays, first testified that respondent had a diseased condition of the spine at the time of the injury and the injury aggravated that condition and that since that time he has been unable

to work, that the injury exaggerated the condition, that the injury broke down the adhesions around the spinal column caused by the osteoarthritis and exaggerated the condition, though he could not say how much the injury had to do with putting respondent in his present condition. Later and upon further examination by a member of the board he stated respondent's present inability to work was due "to the injury that he received which did this separation that I have tried to explain, at the time of the injury and loosened up some of these adhesions and has caused him pain ever since."

It was incumbent upon the board, under the statute, to find somewhere in between the two extremes of entire or no causation, respectively, by the disease or accident, the apportionable compensable norm of respondent's complete disability.

Though Dr. White at one time stated he could not determine the exact proportion due to the accident and later attributed the disability to the accident, he at all times emphasized the effects of the accident on tearing loose and wrenching the arthritic condition already present. The physicians who testified for appellant, while not specifically questioned with regard to this, evidently did not consider it of particular importance but emphasized the progressive nature of the disease they contended respondent was suffering with. This divergence between the two lines of testimony was substantial and a feature to be considered by the board. While Dr. White made no percentage estimate of the accidental injury's contribution to the present disability, it was not unreasonable for the board to have concluded that he considered the major portion of respondent's disability was due to the accidental injury. (*Nu-Way Laundry & Cleaners v. State Industrial Com'n.*, (Okla.), 147 P. (2d) 795.)

It was substantially proven and virtually conceded by all the physicians that respondent prior to the accident, though then afflicted with osteoarthritis, more specifically diagnosed as rheumatoid or Marie-Strumpell's disease, worked and had been working as a logger, but at the present time is totally unable to perform hard manual labor. The accident was rather severe. Before, he could work, now, he cannot. Even though the particular kind of arthritis, i. e.,

Marie-Strumpell's or rheumatoid, is progressive and the X-rays show a marked increase extending over the year between the accident and the hearing, the inability to work existed immediately after the accident.

Thus it is appellant's theory that the accident so affected the diseased condition of respondent's back that at the time he was totally disabled thereby but that the baneful influence and effect of the accident quickly declined and disappeared but that the progressive nature of the disease caused its effect to increase somewhat sharply and that at the time of the hearing he was totally disabled because of the disease. Respondent's theory is to the contrary to the extent at least that the accident continued appreciably to cause the permanent and total disability to the extent of the percentage award made by the board.

There is a hiatus and resultant at least partial non sequitur in appellant's theory in this, that Dr. Hopkins testified the effect of the accident, even on a back in the diseased condition that respondent's was, should have worn off at the end of three months. He testified that the arthritic condition from which respondent was suffering, which he with the other doctors classified as indicated above, would totally disable in from three to five years from the beginning of the infection. If respondent had the disease two years prior to the accident, the earliest time that, according to Dr. Hopkins' testimony, he would have been totally disabled from the accumulating progress of the disease would have been at the time of the hearing, but respondent was not only disabled then and at the time of the accident but had remained so throughout the intervening year. If the total disability due to the immediate effects of the accident had subsided and substantially disappeared and then later developed with the increased progress of the disease, appellant's contention might be correct, but such was not the actual situation. Either the effect of the accident had not worn off at the end of the three months or the progressive disease had not reached the peak of total disability prior to the end of the three-year period indicated by Dr. Hopkins. In either event or a combination of the two the board was justified in considering that the continuance of the disability during at least the seven or eight month period, i. e., from July, 1943, to February or March, 1944, if not beyond, was contributed to by the effect of the

accident to the extent found by it. (*Byrd v. Stonega Coke & Coal Co.*, 182 Va. 212, 28 S.E. (2d) 725; *Williams v. Jones & Laughlin Steel Corp.*, (Pa.), 38 A. (2d) 343.) There was a substantial basis for the board's thought, though undisclosed as such but nevertheless reflected in its ultimate conclusion, that the accident had already produced to a certain percentage total disability even though thereafter the upcurve of the disease would likewise or did cause total disability. In other words, if there were two causes for the total disability, that merely added another factor to be considered by the board, and did not take away the supporting basis of the accidental injury.

Thus, the award of 80% of the loss of the leg at the hip, while higher than the estimate of the three experts called by appellant, was not conjectural or a surmise but had a substantial basis in Dr. White's testimony and in what actually happened, i. e., respondent's uninterrupted disability. (*Williams v. Jones & Laughlin Steel Corp.*, supra.)

The authorities noted above, in addition to these cases, *McCawley v. Crane*, 184 Okla. 64, 85 P. (2d) 423; *Coleman v. City of Newkirk*, 184 Okla. 394, 87 P. (2d) 1074; *Montgomery Ward & Co. v. Industrial Comm.*, 105 Colo. 22, 94 P. (2d) 689; *Malcolm v. State Industrial Comm.*, (Okla.), 143 P. (2d) 823, sustain the board's action.

The strictures upon the board's examination of the physicians are not well taken because it is the board's duty to fully investigate and find the facts. (*Feuling v. Farmers' Co-operative Ditch Co.*, 54 Ida. 326, at 334, 31 P. (2d) 683; *Pierstorff v. Gray's Auto Shop*, 58 Ida. 438, 74 P. (2d) 171; *Dehlin v. Shuck*, 63 Ida. 620, 124 P. (2d) 244.)

The award is therefore affirmed and costs awarded to respondent.

Holden, C.J., and Ailshie, Budge, and Dunlap, JJ., concur.