261 P.2d 818

**HARRIS v. BECHTEL CORPORATION**
et al.

No. 8019.

Supreme Court of Idaho.

Oct. 8, 1953.

Gee & Hargraves, Pocatello, for appellants.

B. W. Davis, Pocatello, for respondent.

TAYLOR, Justice.

The final award of the industrial accident board was made and filed May 9, 1953. The employer and surety served notice of appeal, which was filed June 8, 1953. On the same day, June 8th, the claimant served notice of appeal on the secretary of the board and on counsel for the adverse party. However, this notice was not filed in this court. § 72–609, I.C. provides: "Within thirty days after a final order or an award of the industrial accident board has been made and filed, any party affected thereby may appeal to the Supreme Court * * *. Such appeal shall be taken by filing in the Supreme Court a notice of appeal and serving a copy of the same on the secretary of the board and a copy upon the adverse party or his attorney. Such notice shall be filed and served within thirty days after such final order or award has been made and filed * * *."

The statute not having been complied with, and the timely filing and service of notice of appeal being jurisdictional, the motion of the employer and surety to dismiss claimant's appeal is granted, and such appeal dismissed. Moe v. Harger, 10 Idaho 194, 77 P. 645; Continental & Commercial Trust & Savings Bank v. Werner, 36 Idaho 601, 215 P. 458; Dragon v. Trimburger, 42 Idaho 132, 243 P. 824.

The appellants, employer and surety, make three assignments of error. The first is as follows:

"The findings by the Industrial Accident Board that Respondent's claim was not barred by Section 72–407, Idaho Code, are not based on any substantial, competent evidence, and are not supported by the law."

Section 72–407, I. C. provides, in part:

"Where a claim for compensation has been made, and no compensation has been paid thereon, such claimant shall have one year from the date of making such claim within which to make and file with the industrial accident board, an application demanding a hearing and an award under such claim."

The pertinent findings of the board are as follows:

"The date of the accident on which claim was based is March 30, 1951. Formal claim was made on the employer on that date and was filed with the board April 2, 1951. * * * Petition for hearing was filed January 24, 1953 * * *".

"The surety, after the first reports of Drs. Hearne and Nelson, refused to pay further medical treatment and such refusal was known to claimant. Nevertheless at no time prior to early January, 1953, did the surety break off negotiations with claimant."

"Investigation a year and a half after the event, of the fact as to whether claimant actually had an accident and demanding that claimant produce a witness was unreasonable, in view of the fact that the employer had almost immediate knowledge of the accident and on that knowledge prepared claimant's notice and claim and executed the employer's appended report on the same day."

"It is clear, however, that not until after the insurance agency's receipt of the home office letter of January 5, 1953, did any one representing the defendants finally and definitely tell claimant that the surety's decision to deny liability was final. Prior to that time the investigating agency, while refusing to pay compensation or further medical expense, led claimant to believe that there was still a chance that the surety would adjust by agreement, and he relied on their representations."

"The surety by its representations to and dealing with claimant waived or tolled its [§ 72–407, I.C.] provisions."

Appellants rely upon testimony given by the claimant to the effect that he had been advised by an agent of the surety, on or about May 6, 1951, that the surety would not pay further hospital bills "because they did not recognize the claim." Accepting this as conclusive that the claimant was at that time notified that the surety did not recognize the claim, the testimony shows the agents of the surety continued to deal with the claimant, making such statements to him as: "It would be up to the board."; "It would be up to the board and they hadn't heard from the board yet."; "It would not be necessary to go into any law, it was all taken care of through his office, and I didn't need a lawyer."; and, being asked by claimant "How do I go about it?" [getting compensation], "It is taken care of through this office."

█ It is apparent that, even though claimant knew the surety was resisting liability, the statements of its agents, the continued investigation, and the further hospitalization and medical treatment—payment for which was the subject of some of the conversations given—was such as to lead him to believe that the surety had not

reached a final decision and might ultimately recognize its liability. Claimant testified he believed, and relied on, these statements. The finding is, therefore, supported by competent evidence and cannot be disturbed. § 72–609, I.C. This course of conduct was sufficient to toll the running of the limitation period, and to estop the employer and surety from claiming the bar of the statute. Behanna v. Meyers, 163 Pa. Super. 200, 60 A.2d 608.

Appellants' second assignment of error is as follows:

"The findings by the Industrial Accident Board that appellant had sufficient or timely notice of an accident suffered by respondent on or about November 8, 1952, are not based on any substantial, competent evidence, and are not supported by the law."

Following the first accident of March 30, 1951, the claimant while again in the employ of the appellant, Bechtel Corporation, and on or about November 8, 1952, while assisting in the lifting of some railroad tracks, felt pain in his back (where the original injury had been sustained); that he was not wearing his supporting belt at the time; that thereafter he wore the belt, and continued to work for three or four days and then quit because of the pain; that he went to the office of the employer and "told them I was going to the doctor, that my back was hurting."

The finding as to this accident is as follows:

"The board further finds that the employer had timely notice thereof, sufficient to put it on inquiry; that the defendants had knowledge of the ensuing injury and treatment therefor, and that the defendants were not prejudiced in their defense by the informality in the giving of notice or failure to make a new formal claim."

Appellants' contention is that claimant's testimony is not sufficient to show that he had notified his employer that he had suffered an accident. However that may be as a matter of logic, we agree with the board that it was sufficient and that the defendants were not prejudiced. The employer had full knowledge of the original accident and the resultant injury to claimant's back. As observed by the board, "the issues herein are identical as to both." § 72–405, I.C.; Cooper v. Independent Trans. etc. Co., 52 Idaho 747, 19 P.2d 1057; Page v. State Insurance Fund, 53 Idaho 177, 22 P.2d 681; Clayton v. Hercules Mining Co., 64 Idaho 34, 127 P.2d 762. The employer and surety were the same at the time of each accident. No award had been made, and no voluntary payment of compensation had been made, as to the first accident. The second accident only increased or aggravated the first injury. Under such circumstances there was no occasion for any deduction or apportionment of liability between the two under § 72–323, and the board properly treated the claim as for one

injury resulting from the first accident, as extended and intensified by the second.

Appellants' third assignment is as follows:

"The findings by the Industrial Accident Board awarding respondent compensation for physical conditions which were not a result of any injury suffered in an accident while respondent was employed by appellant, Bechtel Corporation, are not based on any substantial, competent evidence, and do not as a matter of law support the award."

By § 72–323, I.C. the board is authorized and required to apportion the degree and duration of disability between the injury resulting from the accident and that resulting from any preexisting injury or infirmity. Hanson v. Independent School Dist., 50 Idaho 81, 294 P. 513; Cole v. Fruitland Canning Co., 64 Idaho 505, 134 P.2d 603; Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171. As recognized in the Cole case, this statute contemplates the apportionment of hospital and medical expenses as well as other forms of compensation.

As a result of the first accident claimant suffered herniated spinal discs. The record shows that respondent had had previous difficulty with his back; that he had been hospitalized by the Veterans Administration in Reno, Nevada, February 3rd to 6th, 1950, where a myelogram was taken; that

he was there treated for a stiffness of the back muscle and tenderness in the lower lumbar region, lumbosacral, and sacroiliac joint area on the left side, and was reported symptomatically improved; that in the course of the myelogram some residual oil was left in the spinal column; that as a probable result of the residual oil left by the Veterans Hospital, and the spinogram made by Dr. Nelson on January 2, 1953, in examining the patient for treatment of injuries resulting from the accident involved herein, claimant developed arachnoiditis; that for the treatment of the arachnoiditis, his body was immobilized by cast on January 5, 1953; that as a probable result of this immobilization claimant developed renal colic and kidney stones.

The board found that plaintiff's hospitalization and treatment during the periods March 30th to May 4, 1951, November 8th to December 5, 1952, and December 29, 1952 to January 3, 1953, were all occasioned by and attributable to the accident of March 30, 1951, as "aggravated by accidental recurrence on Nov. 8, 1952", and awarded claimant all of the expenses incurred therefor.

The board found that claimant's total temporary disability resulting from the accidental injuries had been four weeks and six days, and allowed full compensation therefor. Total temporary disability resulting from the accident "complicated with preexisting infirmity" or other causes, was

314

found to be seven weeks. One-half of the compensation for this latter period was apportioned to the accident and allowed.

 As to hospitalization from January 3rd to February 20th, 1953, the board found that one-half thereof was attributable to the accidental injuries involved, and awarded claimant one-half of the expense incident thereto. It would seem there can be little room for questioning the accuracy or fairness of the foregoing apportionments. However, all of the medical expense for the treatment of the claimant during this latter period was apportioned to the accidental injuries and allowed. While this element of the award is not specifically attacked by appellants, it seems the most susceptible to the objections they urge. The medical testimony sustains the finding of the board that the myelogram by Dr. Nelson was recognized standard practice in the diagnosis for treatment of the spinal injury and, as testified by Dr. Nelson, this second myelogram possibly precipitated the arachnoiditis, or caused the preexisting condition to flare up. We do not infer that all of the medical expense consequent upon such a chain of circumstances should be apportioned to the accidental injury and none to the preexisting infirmity. However, scientific and mathematical certainty and accuracy in apportioning the degree or duration of the disability to the various contributing factors in such cases is impossible. Consequently the board must be allowed a degree of latitude in making the apportionment. Balancing all of the various items and elements involved in the apportionment here made, we cannot say that the action of the board is not supported by substantial, competent evidence. That being the case, we must affirm its action. § 72–609, I.C. Apportionment of compensation for future hospitalization, medical treatment and disability must, of course, await future developments, and remain open for future consideration and determination by the board.

The award is affirmed with costs to respondent.

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.