302 P.2d 950

Georgia DARVELL, Widow in her own right and as natural guardian of Faye Darvell, a minor, Claimant-Appellant,

v.

The WARDNER INDUSTRIAL UNION, a corporation, and Gus Zoellner Post, American Legion, a corporation d/b/a The Industrial Union-American Legion Club, Employer,

and

The State Insurance Fund, Surety, Defendants-Respondents.

Matter of the Death of William S. Darvell.

No. 8459.

Supreme Court of Idaho.

Oct. 24, 1956.

James G. Towles, Kellogg, for claimant-appellant.

Graydon W. Smith, Atty. Gen., Glenn A. Coughlan, Asst. Atty. Gen., Robert E. Brown, Kellogg, for respondents.

KEETON, Justice.

William S. Darvell, age 73 years, died October 16, 1954. On, and for some time prior to, October 14, 1954, he was an employee of the Industrial Union-American Legion Club at Kellogg in covered employment. The deceased's widow, Georgia Darvell, and a minor daughter, dependent on deceased for support, made claim before the Industrial Accident Board for death benefits, claiming that deceased's death was caused by an accident received in, and arising out of and in the course of his em-

ployment. Hearing was had before the Board which found that the deceased's death was caused by a cerebral hemorrhage due to a vascular arteriosclerotic disease.

From an order denying compensation claimant appealed.

The deceased's duties as an employee were to maintain the floor of bowling alleys, perform janitor services, also do work on pinsetting machines.

Deceased worked a regular shift October 14th and was seen and observed by divers persons on that date, including claimant, at his place of employment. He appeared to be in normal health and nothing unusual happened that any witness observed. He left for home approximately 4:30 and prior to that time had made no complaint to anyone that he had suffered a personal injury by accident or otherwise.

Deceased's residence is a short distance from the bowling alley where deceased was employed. Claimant widow testified that she saw him when he left the employer's premises; he did not look right; when he arrived home she noticed some marks and bruises on his face and forehead; also that from the time he left the place of employment until the time he arrived home he did not slip or fall. Over objection she testified that deceased told her he had fallen; did not say where or when. Deceased was taken to the Wardner Hospital October 15th and was treated by Dr. Whitesel, who

diagnosed the patient's condition as a cerebral vascular disturbance, later cerebral hemorrhage; also observed a slight swelling on his right cheek and forehead, without bleeding or discoloration; and patient's right side of chest painful. The doctor further testified that the contusions on the forehead and cheek and conditions of painfulness in the right chest were of traumatic origin and that trauma was the probable cause of the death.

A month or more prior to the time of the alleged accident, that is, on September 6, 1954, the manager of the employer found deceased ill, sitting on the steps of his place of business. He was taken to the Wardner Hospital, treated by Dr. Whitesel, who found him suffering sub-sternal pain, had an ashen gray face and rapid pulse. The doctor diagnosed his illness as coronary arteriosclerosis heart disease; acute heart embarrassment due to lack of oxygen supply to the heart muscles. He was given oxygen and intravenous aminophyllin and sleeping capsules. He was placed on a diet, ordered to quit smoking and permitted to return to work about September 15th. He was thereafter, while at work, observed as not well and on one occasion complained of dizziness and lack of feeling in his right arm which he soaked in hot water.

Dr. E. J. Fitzgerald, after qualifying, in answer to a hypothetical question covering the facts in evidence, testified that a disease of the blood vessels caused the rup-

ture of the blood vessel in the head and the cerebral hemorrhage of which patient died; that he probably had a generalized vascular disease involving the blood vessels of the heart and brain. The doctor testified:

"I feel that the disease of the blood vessels themselves was most likely the cause of the rupture of the blood vessel and the subsequent cerebral hemorrhage."

Relative to the bruises on the face and forehead, the doctor testified:

"It appears it was not even of sufficient magnitude to produce hemorrhage underneath the skin which would cause discoloration."

and further:

"The reason I would like to minimize the relationship between the alleged minor injury to the side of his cheek is because, in my opinion, I don't believe that he could rupture a blood vessel in his brain between three and three-thirty or four and four-thirty in the afternoon and walk home and climb 12 or 16 steps and not have this thing prove fatal before five-fifteen on October 16th, almost two days later.

It is usually the medical finding there is a cerebral hemorrhage immediately, and the symptoms immediate, and the symptoms become progressively worse immediately. The interval of time, I think, in this picture is very important."

The Board found that claimant failed to establish that deceased suffered an accidental injury arising out of and in the course of his employment; that it is more probable that the unknown, untoward incident of October 14, 1954, which marked the beginning of decedent's last illness and his death from cerebral hemorrhage on the 16th following was caused by vascular or arteriosclerosis disease and denied benefits.

Claimant's assignments of error challenge the findings of the Board and the conclusion reached, and may in general be summarized as presenting the question—did deceased suffer an accidental personal injury arising out of and in the course of his employment which contributed to or caused his death?

■ In contested workmen's compensation cases, claimant has the burden of proof that an accident occurred which resulted in injury or death within the terms of the act, i. e., claimant must show by a preponderance of the evidence an unexpected, undesigned and unlooked for mishap or untoward event which happened suddenly and was connected with the industry in which it occurred. Sec. 72–201, I.C.; Jensen v. Bohemian Breweries, Inc., 64 Idaho 679, 135 P.2d 442; Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Stroscheim v. Shay, 63

Idaho 360, 120 P.2d 267; Brooke v. Nolan, 59 Idaho 759, 87 P.2d 470.

While an inference could be drawn from the record of a possible occurrence of an industrial accident, nevertheless no direct testimony was adduced or evidentiary circumstances shown which indicated or tended to show that if an industrial accident actually occurred it was the cause of death. Furthermore, the conflict which appears in the medical testimony has been resolved by the Industrial Accident Board in favor of the employer.

■■ There must be a probable not a possible connection between cause and effect to constitute a compensable accident. We are of the opinion that the findings and conclusions made by the Board were based on substantial evidence, sufficient to support such findings and conclusions, and hence cannot be disturbed on appeal. Sec. 72–608, I.C.; Jensen v. Bohemian Breweries, Inc., supra; Stralovich v. Sunshine Mining Co., 68 Idaho 524, 201 P.2d 106; Shumaker v. Hunter Lease & Gold Hunter Mines, 72 Idaho 173, 238 P.2d 425; Adams v. Bitco, Inc., 72 Idaho 178, 238 P.2d 428; Kernaghan v. Sunshine Mining Company, 73 Idaho 106, 245 P.2d 806.

■ We think the Board was correct in concluding that the deceased died from nat-

ural causes and not from an accidental personal injury. The order is affirmed.

TAYLOR, C. J., and PORTER, ANDERSON and SMITH, JJ., concur.