348 P.2d 939

William P. BEARD, Employee, Claimant-Respondent,

v.

POST COMPANY, a corporation d/b/a The Post Register, Employer, Defendant-Respondent,

and

Liberty National Insurance Company (Formerly Idaho Compensation Company), Surety, Defendant-Respondent,

and

Western Pacific Insurance Company, Surety, Defendant-Respondent,

and

ICT Insurance Company of Texas and/or Tri-State Insurance Company, Surety, Defendant-Appellant.

No. 8801.

Supreme Court of Idaho.

Jan. 29, 1960.

Elam & Burke, Boise, for ICT Ins. Co. of Texas and/or Tri-State Ins. Co., defendant-appellant.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for claimant-respondent.

Holden, Holden & Kidwell, Idaho Falls, for employer-defendant-respondent.

Coughlan, Imhoff & Shepard, Boise, for Liberty Nat. Ins. Co., defendant-respondent.

Richards, Haga & Eberle, Boise, for Western Pac. Ins. Co., defendant-respondent.

KNUDSON, Justice.

On June 1, 1953, claimant William P. Beard was an employee of The Post Company, a corporation d/b/a The Post Register, defendant-respondent. The Post Company (employer) had Liberty National Insurance Company (formerly Idaho Com-

pensation Company) defendant-respondent as its surety for the year 1953, Western Pacific Insurance Company, defendant-respondent, as its surety for the year 1954, and defendant-appellant ICT Insurance Company of Texas and/or Tri-State Insurance Company as its surety for 1955.

Claimant, while working as a printer foreman in the composing room of his employer on June 1, 1953, sustained injuries to his back and neck. On June 8, 1953, he filed a notice of injury and claim for compensation with the Industrial Accident Board, a copy of which was served upon the then surety Idaho Compensation Company. On October 1, 1953, the surety having since changed its name to Liberty National Insurance Company reported that the medical expenses amounting to $73.66 had been paid. No compensation was paid to claimant as he lost no compensable time and no determination was made as to permanent partial disability.

On June 25, 1954, claimant again filed a claim with the Industrial Accident Board in which claimant alleges that an accident occurred on April 21, 1954. Service of this claim was made on Liberty National Insurance Company as surety during 1953 and Western Pacific Insurance Company as surety in 1954. The Liberty National Insurance Company on October 8, 1954, wrote the Western Pacific Insurance Company sending a copy to the Board that the Liberty National Insurance Company had paid the hospital bill in the amount of $140.85 and invited pro-rating of liability.

A third claim was filed by claimant with the Board on April 27, 1955, in which he alleges that an accident occurred on March 19, 1955. Copies of this notice of claim were served on each of the sureties for the years 1953 and 1954 and upon appellant as the surety for 1955. No medical payments were made under this claim.

On April 18, 1957, claimant filed with the Board a petition for hearing in connection with all three of his said claims to which each of the three sureties filed an answer denying liability. At the close of the hearing on May 1, 1957, it was determined that claimant be examined by a neurosurgeon and the hearing was continued pending the outcome of such examination. The neurosurgical examination was performed on May 20, 1957, and three days later a surgical operation was performed upon claimant following which claimant underwent surgical treatment until a final examination was made on February 8, 1958. On March 26, 1958, the neurosurgeon reported his medical findings and evaluated claimant's residual disability as equal to 15% of the loss of the right arm at the shoulder joint. This estimate of residual disability was adopted by the Board. The 1957 and 1958 medical, surgical and hospital expenses totaled $1,399.-75.

On June 27, 1958, counsel for the three sureties met with the Board. Liberty National Insurance Company and Western Pacific Insurance Company, through their respective counsel, and without admitting liability, each voluntarily tendered one-third of the outstanding medical expenses of claimant and one-third of the permanent partial disability rating. Appellant denied liability for any part of the medical expenses or compensation.

On May 14, 1959, the Board filed findings of fact and conclusions of law and made an award to claimant as specific indemnity for permanent partial disability equivalent to 15% of the loss of an arm at the shoulder in the amount of $900, payable at $25 per week for thirty-six weeks. It was deemed by the Board that defendant-employer was liable for only three-fourths of the specific indemnity award or $675. Each of the three sureties was made liable for one-third of said $675 or $225. The Board found that the Liberty National Insurance Company was liable for the medical expense incurred during the year 1953, Western Pacific Insurance Company for the medical expense incurred in 1954 and that appellant was liable for the medical expense incurred in 1955. The 1957 and 1958 medical expense amounting to $1,399.75 was found by the Board to be subject to the same apportionment as the partial permanent disability, i. e., claimant liable for 25%, with the remaining 75%

liability apportioned one-third to each of the sureties. The Board made an award accordingly. This appeal is taken from that portion of the award against appellant.

Under appellant's specifications of error, which are interrelated, it is contended that the Board failed to make any specific finding as to any occurrence involving claimant during 1955 which was an accident within the meaning of the Workmen's Compensation Law of this state, and that the award is based upon findings unsupported by the evidence.

We shall first determine whether the evidence establishes that claimant sustained an injury as a result of an accident arising out of and in the course of his employment by respondent The Post Company during 1955. A review of the notices of injury and claims for compensation filed by claimant discloses that the first notice was dated June 5, 1953, and filed with the Board on June 8, 1953. In said notice claimant stated that on June 1, 1953, while working with an electrically driven Elrod he had an accident which he described as:

"Lifting plunger, which was frozen in well, suddenly gave way causing employee to be thrown off balance, strained back and neck."

The next notice of injury filed by claimant on June 25, 1954, states that an acci-

dent occurred April 26, 1954, and in describing how the claimed accident happened it is stated:

"See report of June 5th, 1953. This was a reoccurrence of the same, strained back and neck last year."

The last notice of injury was filed by claimant on April 20, 1955, and states that an accident occurred March 19, 1955. In describing how this accident happened it is stated:

"See report of June 5, 1953. This was a reoccurrence of the same. Lifting plunger which was frozen in well, suddenly gave way causing employee to be thrown off balance. Strained back and neck."

It was stipulated by appellant that claimant, on or about June 1, 1953, received an injury arising out of and in the course of his employment. Claimant described the effect of that injury as causing a partial paralysis of his left arm and hand. The doctors who examined claimant expressed the opinion that claimant sustained a disc injury at that time. Since we are here concerned with what happened to claimant during 1955 it is unnecessary to review in detail claimant's work or medical history during 1954. Claimant testified that from April, 1954 to May 1, 1957 (being the date of the first hearing before the Board) he experienced continuous pain in his arms. Claimant further testified that about March

19, 1955, he experienced a great increase in pain and reported to his doctor that the onset of such severe pain occurred while he was in traction in bed at home on a Sunday. Claimant was questioned several times if he had an accident of any kind during 1955 to which he repeatedly replied that no accident occurred. The following is an excerpt from his testimony in this regard:

"Q. Then in March of 1955, did you then file a further—or rather, on the 20th of April, 1955, did you file a further claim at that time? A. Yes.

"Q. You remember that now? A. Yes.

"Q. What happened that you filed a claim at that time? A. Just a reoccurrence, I guess.

"Q. Can you tell just what took place about March 19, 1955? A. Well, they were—

"Q. Did Dr. Sell send you back to the hospital at that time? A. Yes.

"Q. And you filed a further claim at that time? A. Yes.

"Q. Did anything happen around that time just before he sent you to the hospital? A. Not that I recall—in the way of an accident."

Again referring to March, 1955 claimant testified:

"Q. Did you have any accident or anything of that kind by way of a

sudden injury or anything? A. Not that I know of."

Referring to the entire year 1955 claimant stated:

"Q. Had you ever at any time in 1955 had any kind of a slip or fall of any kind? A. Not that I know of."

Dr. Sell whom claimant had consistently consulted since his accident in 1953, when interrogated as to the probable cause of the recurring severe pain which claimant experienced about March 19, 1955, testified as follows:

"Q. In March of 1955, did you have occasion to see Mr. Beard again? A. I had seen him a couple of times in the meantime and finally I stated I was going to hospitalize him because his condition was such I felt it warranted it. I notified the insurance carrier on the 21st of March he had had a recurrence with sufficient symptoms to warrant hospitalization for conservative care, and I put him in the hospital where he did fairly well. That was March 1955.

"Q. Did you have any information as to why this recurrence took place in March of 1955? A. I have some little bit of information. It doesn't relate directly to what you just asked me. The patient stated he was having pain in the left arm. He stated he had been using traction on Sunday and while lying in traction he was hit by a pain in the left shoulder and left side of his neck. Apparently, at least *that one incident of pain came on without any aggravating trauma,* you might say. (Emphasis supplied.)

\* \* \* \* \* \*

"Q. I don't wish to labor the point, but I believe from your report it is evident at least immediately prior to the hospitalization in 1955, the onset of pain occurred when the claimant was in bed? A. Quite true

"Q. So it is a correct statement, any number of minor things, even that he didn't detect, could have been the cause of the immediate trouble? A. It is conceivable, Sir.

"Q. In this case there is some evidence that might have been true, is that not correct? A. That is correct."

Dr. Sell when questioned regarding claimant's history as to any accident in 1955 stated:

"Q. In 1955 there was nothing in the history to indicate any accident at that time—I mean any slip or fall or anything of that sort in 1955? A. Not that I know of, Sir."

When questioned as to whether the increased pain such as claimant experienced in March 1955 is necessarily connected with any particular injury Dr. Sell stated:

"A. It depends on how you gentlemen wish to define injury. We physicians many times consider just the exigencies of life as minor injuries often repeated as an injury—falling down, strains and such. *The gentlemen never did relate to me any specific thing like that.*" (Emphasis supplied.)

■ According to the testimony of claimant and his doctor it was the recurrence of symptoms and not an accident which prompted the filing of the last notice and the evidence does not disclose that an accident occurred during 1955. In order to sustain an award against appellant claimant must show by a preponderence of the evidence that an accident occurred during 1955 which resulted in injury to himself. Darvell v. Wardner Industrial Union, 78 Idaho 309, 302 P.2d 950; Jensen v. Bohemian Breweries, Inc., 64 Idaho 679, 135 P.2d 442; Dyre v. Kloepfer and Cahoon, 64 Idaho 612, 134 P.2d 610.

■ An "accident" under the Workmen's Compensation Law is defined by I.C. § 72–201 as follows:

" 'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law."

The injury must be caused by the accident and result in violence to the physical structure of the body, I.C. § 72–201; and is only compensable when it is the result of an accident, I.C. § 72–1013.

The following excerpts from claimant's testimony regarding his work history during 1955 are significant:

"Q. Were you doing any lifting, or anything outside of your ordinary duties? A. Not out of the ordinary, no, Sir.

\* \* \* \* \* \*

"Q. In 1955, let's see if the difficulties you had in 1954—did you after that time put in any extra hours? A. No, Sir.

"Q. In other words, in 1955 you were not working extra hours? A. Sir, I was working some extra hours but it was on clerical work.

"Q. It was clerical work? A. Like on Saturday or Sunday.

"Q. So far as the nature of your work was concerned did you do, in 1955, any more of the heavy lifting of any sort? A. No, Sir.

"Q. And it is a fact, is it not, that your work in 1955 was of a supervisory nature? A. Yes.

\* \* \* \* \* \*

"Q. Before that your lifting was limited to lifting light loads, prior to May? A. Yes.

"Q. You didn't do any heavy lifting prior to May, 1955 at all? A. No.

"Q. And your hours prior to May of 1955 were the shorter hours? A. Yes.

\* \* \* \* \* \*

"Q. You had no long working hours in 1955 just before you went into the hospital? A. No.

"Q. None of that work you were doing during 1955 was of an exhaustive nature? A. No."

The Board expressly found that claimant did not experience any sudden, untoward mishap during 1955. However the Board did find that an exacerbation in 1955 was one of the causes for claimant's final disability and based its award against appellant upon such finding. There is no finding as to when in 1955 or where such exacerbation occurred or what event, if any, caused it. I.C. § 72–323 provides:

"(a) If the degree or duration of disability resulting from an accident is is increased or prolonged because of a preexisting injury or infirmity the employer shall be liable only for the additional disability resulting from such accident."

If liability is to stem from an increase of a preexisting injury or infirmity it must be established by substantial evidence that an unexpected, untoward event or circumstance produced such exacerbation. I.C. § 72–1013; Carlson v. Batts, 69 Idaho 456, 207 P.2d 1023; In re Carrie, 73 Idaho 503, 254 P.2d 410; Swan v. Williamson, 74 Idaho 32, 257 P.2d 552.

Since the Board failed to find and the evidence does not disclose what happened to cause the exacerbation referred to, the conclusion that it occurred in 1955 is unsupported. It is the duty of the Board to make specific and necessary findings of fact on which to predicate an award and such findings must be supported by substantial competent evidence; In re MacKenzie, 54 Idaho 481, 33 P.2d 113; Dyre v. Kloepfer and Cahoon, supra; Miller v. State, 69 Idaho 122, 203 P.2d 1007.

We are of the opinion that the facts of this case do not warrant the conclusion that claimant sustained an injury resulting from an industrial accident during 1955. That part of the award here appealed from is not supported by competent evidence. The order of the Board granting an award against appellant is reversed and the cause remanded with directions to set aside the award as against appellant. Costs to appellant.

TAYLOR, C. J., and SMITH and McQUADE, JJ., concur.

PORTER, J., sat at the hearing but died before the Court reached its decision.