369 P.2d 580

John J. LINDSKOG, Claimant-Respondent,

v.

ROSEBUD MINES, INC., Employer, and State Insurance Fund, Surety, Defendants-Appellants.

John J. LINDSKOG, Claimant-Respondent,

v.

INTERMOUNTAIN LUMBER COMPANY, Inc., Employer, and the Travelers Indemnity Company, Surety, Defendants-Respondents.

No. 9046.

Supreme Court of Idaho.

March 9, 1962.

Coughlan & Imhoff, Boise, for appellants.

Davison, Davison & Copple, Boise, for claimant-respondent.

Marcus & Evans, Boise, for respondents Intermountain Lumber Co. and Travelers Indemnity Co.

TAYLOR, Justice.

November 10, 1955, claimant (respondent) suffered an injury to the lumbo-sacral area of his back, by accident arising out of and in the course of his employment by the Rosebud Mines, Inc., (appellant), for which the State Insurance Fund (appellant) was surety. The fund thereafter paid total temporary disability compensation for the period from November 11, 1955, to March 31, 1956, in the sum of $811.43 and the sum of $665.05, for medical care and treatment and expenses incident thereto. These payments were voluntarily made; no agree-

ment or award of compensation was ever entered into or made. Claimant's attending physician, Dr. Z. A. Johnson, reported that claimant would be able to return to work April 1, 1956. No further payments of disability compensation were made after that date. The physician in his final report dated August 31, 1956, said:

"Patient may have a permanently damaged intervertebral disc, as he continues to have mild back discomfort, but has returned to regular work."

When discharged from the hospital, claimant was wearing a brace or back support, prescribed by Dr. Johnson. He entered the employ of respondent Intermountain Lumber Company early in July, 1956, as a millwright. Intermountain's surety was respondent, The Travelers Indemnity Company. The lumber company assigned only light work to claimant, and although he tried to do so, he was unable to work without the brace. Any heavy tasks connected with his job were handled for him by other employees of the lumber company. He continued to suffer pain and discomfort, which at times required him to stop work and take rest periods. At times his legs gave way, causing him to fall. On such occasions he would not permit fellow employees to come to his assistance, because of the pain, but would maneuver himself into a position where he could arise by himself and resume work.

Claimant continued to visit Dr. Johnson on occasions when his pain was most severe. Dr. Johnson referred claimant to L. Stanley Sell, an orthopedic physician and surgeon in Idaho Falls. In his first report, July 3, 1956, Dr. Sell stated:

"The lumbar films show marked narrowing of the lumbo-sacral disc, increase in the lumbar curve to approximately 90°. Slight wedging of the 11th and 12th thoracic vertebrae, anteriorly, (old)."

At the suggestion of Dr. Johnson by letter of April 22, 1957, the fund requested that Dr. Sell again examine claimant and further report. May 3, 1957, Dr. Sell made the requested examination, and concluded his report thereof as follows:

"I discussed this patient's condition with him considerably and told him that he had had a considerable amount of conservative treatment with apparently an incomplete recovery as far as he was concerned. If he wished to take any further steps, it would be necessary to do a myelogram to determine if operative intervention would be of any avail to him. He said he would be willing to submit to this and accordingly we are requesting with this report permission to go ahead and do myelography. If any operative intervention seems indicated, we will then report the same to you before proceeding."

The fund's response to this report, dated May 16, 1957, was as follows:

"Reference your letter May 3, 1957. Authorization granted for hospitalization, myelography and surgery for the above named Claimant."

In response to the authorization claimant was hospitalized May 28, 1957, and myelography was taken by Dr. Sell. May 29, 1957, Dr. Sell reported that the myelogram did not show "any evidence of disc protrusion, and * * *

"With these findings I did not feel justified in offering any operative intervention to this particular patient and, therefore, have asked him and his family doctor, Zach Johnson, to continue with the conservative management.

"It is too early to estimate what the ultimate outcome will be in this particular patient's case."

In a letter addressed to Dr. Johnson, October 30, 1957, the fund requested:

"We would appreciate your courtesy in submitting to this office and the Industrial Accident Board a detailed medical report indicating Claimant's present progress and future prognosis."

Responsive to Dr. Johnson's report of November 20, 1957, the fund under date of December 2, 1957, requested a follow-up orthopedic examination and report from Dr. Sell. Under date of December 13, 1957, Dr. Sell reported:

"This patient is making a slow but satisfactory recovery from his injury, and no change in treatment was recommended today."

In July, 1958, at the request of Dr. Johnson, the fund authorized and provided a new back support. January 29, 1959, the fund requested "up-to-date medical reports," from Dr. Johnson. Dr. Johnson's response, February 24, 1959, is as follows:

"Mr. Lindskog's back condition is essentially unchanged at the present time. He is working doing relatively light work but has to wear a back support most of the time. His back does bother him frequently but with the aid of the back support he has not had to discontinue working."

By letter of March 5, 1959, addressed to Dr. Sell, the fund noted that the four-year limitation period would expire November 11, 1959, and said:

"A recent report from his Attending Physician Doctor Z. A. Johnson, M.D., indicates that in his opinion, claimant's back condition is essentially unchanged at the present time. We would appreciate your courtesy in furnishing the claimant with an appointment date to report to your office for a final orthopedic examination in connection with

his injury. After the completion of his examination, please submit two copies of your report and fee bill to this office with a third copy of your report being submitted to Dr. Z. A. Johnson, M.D., for his information and attention.

"A copy of this communication is being furnished to the claimant with instructions that he report to you on the date specified for examination. After completion of examination, return to his home, he is to submit his travel receipts direct to our office for reimbursement of expenses incurred when reporting for examination."

A copy of this letter was mailed to claimant and to Dr. Johnson. Responsive to this request Dr. Sell examined claimant March 18, 1959, and among other things reported:

"The * * * patient was in my office today. He is still wearing his back brace. At the present time and for the past couple years, I guess, he has been employed as a millwright at the Intermountain Lumber Company. He states he has been working every day. He has lost as a total about five days from work on account of his back, but on each occasion it has never been more than a day or so and he states they have been very good to him at his place of employment and he does not have to do any heavy lifting. He states that he feels he will never be able to return to heavy manual labor again and doubts that he can ever get along without his back brace.

"Conclusion: This patient's condition seems to be about static at the present time. I told him I saw no reason why he should not just continue on as he is and just before his four years time is up he should come in and be reexamined and have his partial permanent disability rated."

October 15, 1959, the fund addressed a letter to Dr. Sell, again advising that the four-year period would expire November 11, 1959, and:

"We would appreciate your courtesy in furnishing claimant with an appointment date prior to this time to report to your office for a follow-up orthopedic examination and disability evaluation if it is in order in connection with the above referenced injury.

"A copy of this communication is being furnished to the claimant with the request that he report to you on the date specified for examination."

Responsive to this request Dr. Sell examined claimant October 28, 1959, and at the conclusion of his report said:

"Both the patient and I agree that his symptoms are not severe enough to warrant operative intervention. He

feels that as long as he wears his brace and continues in his present occupation he can get along quite nicely. I would estimate, therefore, that the patient has come to the end of his healing period, that his back condition is static and his partial permanent disability is not greater than 20% as compared to loss of one leg at the hip joint."

November 5, 1959, the fund wrote claimant and enclosed for his signature a compensation agreement adopting, and based upon, the partial permanent disability rating, reported by Dr. Sell, in the sum of $900.00. Claimant consulted Dr. Johnson in reference to the proposed agreement and, at Dr. Johnson's suggestion, he consulted an attorney at Salmon, who referred claimant to an attorney in Boise. The proposed agreement was never signed by claimant.

November 19, 1959, claimant was engaged in repair welding on a fork lift at the shop of the Intermountain Lumber Company. This he did from a position on the fender of the machine, about three and a half feet above the ground. Upon finishing the job and in moving to get down, his left foot caught and he fell to the ground, again injuring his back in the same area as before. This accident rendered claimant totally disabled.

He was brought to Boise, January 8, 1960, where he was examined by Dr. Jerome K. Burton, an orthopedic surgeon. Dr. Burton hospitalized claimant February 22, 1960, and performed a laminectomy and spinal fusion February 24th.

January 15, 1960, the fund addressed a letter to claimant referring to its previous letter and the proposed compensation agreement, requesting advice from claimant as to his disposition of the same.

May 5, 1960, the fund addressed a letter to claimant's Boise attorney, advising that the fund considered claimant surgically healed at the time he was examined by Dr. Sell and his disability fixed at 20%, and that the fund was willing to assume liability on a voluntary basis for that amount and nothing else.

Patient testified that his attacks of pain were becoming more frequent and that the pain went into his legs; that before the accident of November 19, 1959, occurred, Dr. Johnson had recommended that he see Dr. Burton, and Dr. Johnson was undertaking to arrange an examination by Dr. Burton before his injury of November 19th.

Claimant had never consulted with or been advised by an attorney prior to his receipt of the proposed compensation agreement.

■ The Industrial Accident Board properly ruled that the limitation period for the making of an application for an award on the ground of change in condi-

tions, provided by I.C. § 72–607, was not applicable because in this case no agreement or award had been made or entered.

Idaho Code § 72–407 provides:

"Where, on account of personal injury, payments of compensation have been made and thereafter discontinued, such claimant shall have four years from the date of the accident within which to make and file with the industrial accident board an application demanding a hearing for further compensation and an award. * *

"In the event an application is not made and filed as herein provided, relief on any such claim shall be forever barred."

As to this limitation, the board ruled:

"From a preponderance of the evidence, oral and documentary, the Board finds that by its actions, the defendants, Rosebud Mines, Inc., and the State Insurance Fund waived the four-year limitations embodied in Sec. 72–407, I.C. Said defendants' plea in bar is therefore overruled and denied."

The board called attention to the fact that the plea of limitation had not been asserted until the answer to the cross-complaint was filed June 2, 1960, and said:

"The customary procedure of sureties denying further liability upon the expiration of a period of limitations is promptly to notify both the claimant and the Board of its denial, at the same time making a summary report and requesting closure of the case."

 Rosebud Mines and the fund assign as error the ruling that the four-year limitation was waived. The correspondence, above set out, indicates that there was no attempt on the part of the employer or surety to mislead claimant. However, claimant having no advice of counsel until the period was about to expire, and the fund continuing to ask for medical examinations and reports, the expenses of which it authorized and paid, and the furnishing of back supports during this period of time, could very well have led claimant to believe that the employer and the fund had not reached a final decision either as to the end of the healing period or the evaluation of permanent partial disability. The board found that "Lindskog did not consider that he was healed, owing to his frequent recurrences of pain and weakness."

There is evidence tending to support either conclusion as to the waiver of the bar of the limitation statute. The letters directed by the fund to Dr. Sell of March 5, and October 15, 1959, copies of which were mailed to claimant, tend to indicate that the fund was not waiving the limitation. Whereas, the evidence as to continued inquiries and the effort to deter-

mine whether claimant's condition had become static, and the furnishing of medical help and appliances, tend to support the view that surety and employer did not intend to insist upon the limitation right. Such being the case, we are bound by the rule that the findings of the accident board, when supported by competent, substantial, though conflicting, evidence, will not be disturbed on appeal. Art. 5, § 9, Const.; Clevenger v. Potlatch Forests, Inc., 82 Idaho 383, 353 P.2d 396; Brewster v. McComb, 78 Idaho 228, 300 P.2d 507; Peterson v. Sunset Minerals, Inc., 75 Idaho 354, 272 P.2d 692; Oliver v. Potlatch Forests, Inc., 73 Idaho 45, 245 P.2d 775.

This case is in some respects similar to Harris v. Bechtel Corporation, 74 Idaho 308, 261 P.2d 818. In that case we said:

> "It is apparent that, even though claimant knew the surety was resisting liability, the statements of its agents, the continued investigation, and the further hospitalization and medical treatment—payment for which was the subject of some of the conversations given—was such as to lead him to believe that the surety had not reached a final decision and might ultimately recognize its liability. Claimant testified he believed, and relied on, these statements. The finding is, therefore, supported by competent evidence and cannot be disturbed. § 72–609, I.C. This course of conduct

was sufficient to toll the running of the limitation period, and to estop the employer and surety from claiming the bar of the statute. Behanna v. Meyers, 163 Pa.Super. 200, 60 A.2d 608." 74 Idaho at 311–312, 261 P.2d at 820.

As to apportionment, the board ruled:

> "The Board rules that liability for total temporary disability compensation and for expenses of surgical and kindred treatment following Lindskog's injury of *December* 19, 1959, as well as specific indemnity for residual partial permanent disability are all subject to apportionment under Sec. 72–323, I.C.

> "Generally in apportionment cases involving two injuries, as urged in argument by counsel for the State Insurance Fund, it has been customary to allocate liability for medical and kindred expenses and compensation for total temporary disability to the employer (and surety) at the time of the last accident on the theory that, while the necessity for surgery was due to the combined effect of both accidents, the immediacy of the operation was occasioned by the last accident; and apportionment has been applied to specific indemnity for residual permanent disability.

> "This case, however, presents a somewhat different set of circum-

stances, distinguishing it from the ordinary case.

"At the time of plaintiff's second accident, he and his attending physician were considering a rehabilitative operation on account of the first accident. Also in this case the plaintiff's undisputed testimony was that, had it not been for his impaired agility due to the first accident, he could have avoided the second accident * * *.

"The Board has adopted Dr. Burton's final estimate of residual disability and apportionment and deems that the same apportionment should apply to all elements of recovery, compensation for total temporary disability, medical and kindred expenses, and specific indemnity for residual partial permanent disability.

"Reduced to a formula by computation from Dr. Burton's apportionment, 44.44% of liability for the second accidental injury is allocated to Rosebud Mines, Inc., and its surety, State Insurance Fund, and 55.56% thereof to Intermountain Lumber Company, Inc. and its surety, The Travelers Indemnity Company."

Award was made and entered accordingly.

■ Appellants assign as error the apportionment of the liability for temporary total disability and medical and hospital expenses following the second injury, contending that I.C. § 72–323 does not authorize the apportionment of these items.

In Beard v. Post Company, 82 Idaho 38, 348 P.2d 939, where the claimant claimed an injury in each of three successive years, the board apportioned hospital and medical expenses incurred in the last year. This court reversed the apportionment against the surety for the last yearly period, on the ground the evidence did not show that an accident had occurred during that period.

In Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775, the board apportioned hospital and medical expenses, as well as disability. The finding as to apportionment was reversed for want of support in the medical testimony. No issue was raised as to the propriety of apportionment of medical and hospital expenses.

In Cole v. Fruitland Canning Ass'n, 64 Idaho 505, 134 P.2d 603, the claimant urged that a cancerous kidney was so damaged by an accident that its removal became necessary. While the court upheld the finding of the board that the evidence did not establish that the removal of the kidney was made necessary by the accident, the court said:

"* * * If, then, the injury sustained by claimant September 7, 1941, without reference to his pre-existing

disease, made the removal of the cancerous kidney necessary, then, and in such case, claimant would be entitled to an operation to remove such kidney at the expense of respondents and to compensation until he is surgically healed." 64 Idaho at 512, 134 P.2d at 606.

Harris v. Bechtel Corporation, 74 Idaho 308, 261 P.2d 818, was a case involving successive back injuries. It was there held:

"By § 72–323, I.C. the board is authorized and required to apportion the degree and duration of disability between the injury resulting from the accident and that resulting from any preexisting injury or infirmity. Hanson v. Independent School Dist. [11–J], 50 Idaho 81, 294 P. 513; Cole v. Fruitland Canning Co. [Ass'n], 64 Idaho 505, 134 P.2d 603; Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171. As recognized in the Cole case, this statute contemplates the apportionment of hospital and medical expenses as well as other forms of compensation." 74 Idaho at 313, 261 P.2d at 821.

The award is affirmed.

Costs to respondents.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.