372 P.2d 761

Dick T. CLARK, Employee, Claimant-Respondent,

v.

BRENNAN CONSTRUCTION COMPANY, Employer, and Argonaut Insurance Company, Surety, Defendants-Appellants.

Dick T. CLARK, Employe, Claimant-Respondent,

v.

BRYCE HACKING COMPANY, Employer, and The Travelers Indemnity Company, Surety, Defendants-Respondents.

No. 9087.

Supreme Court of Idaho.

June 28, 1962.

John W. Barrett, of Moffatt & Thomas, Boise, for defendants-appellants.

Ralph H. Jones, and Lamont Jones, of Jones, Pomeroy & Jones, Pocatello, for claimant-respondent.

R. Vern Kidwell, of Holden, Holden & Kidwell, Idaho Falls, for defendants-respondents.

SMITH, Chief Justice.

Claimant-respondent Dick T. Clark is herein designated as claimant. The Industrial Accident Board is herein sometimes referred to as the Board.

This appeal involves the question of liability of appellants Brennan Construction Company, an employer, and its compensation surety, for payment of the portion of an award apportioned by the Board against them in favor of claimant.

Claimant was awarded compensation benefits on an apportioned basis against each of two employers, Brennan Construction Company and Bryce Hacking Company, and their respective sureties. The case involves low back infirmities and injuries received by claimant in covered employment.

Claimant first received injury to his low back and left hip during 1951 while a member of the armed forces. His most recent examination on account of that injury was April 24, 1958, at which time the condition was diagnosed as a sacroiliac strain.

Claimant's first industrial injury, a "painful wrenched back" in the lumbo-sacral area, occurred June 5, 1958, while employed by appellant Brennan Construction Company. He thereupon visited a physician

twice, on June 6 and July 15, 1958, but did not cease work. Claimant did not then complain of sciatic pain in his legs; nor did his attending physician find or suspect a herniated intervertebral disc. After that accident, recurrent pain became progressively worse.

September 24, 1959, claimant returned to the physician who had attended him during June and July, 1958, complaining of pain in his low back. Again, the doctor found no indication of herniated disc. The doctor felt, however, that claimant then had a probable partial permanent disability comparable from 5% to 10% loss of one leg at the hip.

Claimant's second industrial injury occurred April 8, 1960, while employed by respondent Bryce Hacking Company. Claimant attributed that occurrence as causative of "a pain again in my back, a snap or a dull pain." The next day he visited an osteopathic physician under whose treatment he remained from April 9 to June 17, 1960, when he was discharged with "no permanent injury and no loss of time."

April 18, 1960, claimant filed a formal claim for compensation with the Industrial Accident Board.

July 9, 1960, claimant was examined by a neuro-surgeon. Myelogramic studies revealed that claimant then suffered herniation of the intervertebral disc between the 5th and 6th lumbar vertebrae. Thereafter, claimant was hospitalized and the condition remedied by operative· procedure. Claimant was released from the hospital August 15, 1960. His total temporary disability continued from July 9 to November 15, 1960, including his period of convalescence.

At the conclusion of proceedings initiated to recover compensation, the Board awarded claimant (1) compensation for total temporary disability for the period of surgical treatment following his 1960 accident, and of convalescence; (2) specific indemnity for residual partial permanent disability attributable to his 1958 and 1960 accidental injuries, and (3) reimbursement of two-thirds of medical and surgical expenses and hospital care incident to treatment following his 1960 injury. The Board then apportioned liability for payment of the award between the two employers and sureties. Respondent Bryce Hacking Company and its surety raise no issue as to the award apportioned against them, and have not appealed.

The portion of the award apportioned by the Board against appellant Brennan Construction Company and its surety, in favor of claimant, "on account of his accidental injury of June 5, 1958, * * * and on account of subsequent change of claimant's physical condition due in part to said accidental injury of June 5, 1958," is as follows:

50% of claimant's total temporary disability for work for a total
period of 15⅚ weeks _____$ 322.15

33⅓% of claimant's surgical and kindred expenses incurred for
treatment July 9 to November 15, 1960, being ⅓ of $751.35 _____ 250.45

50% of the specific indemnity for claimant's partial permanent
disability equivalent to 10% loss of one leg at the hip, 50% being
for a period of 9 weeks _____ 225.60

Total        $ 797.60

---

Appellant Brennan Construction Company, employer, and its surety, appealed from the award as apportioned against them. They contend that the Board erred in ruling:

First, that liability for total temporary disability compensation and expenses of medical-surgical treatment following claimant's injury of April 8, 1960, are subject to apportionment under I.C. § 72–323, and in apportioning liability against appellants for payment of any such items; and Second, in finding that prior to April 8, 1960, claimant had a ratable partial permanent disability resulting from the industrial injury of June 5, 1958, and in apportioning liability against appellants for payment of any specific indemnity therefor.

Appellants' specifications of error question the sufficiency of the evidence to support the Board's findings and the portion of award apportioned against them. Such requires review of the evidence.

The apportionment statute, I.C. § 72–323, enacted in 1941, insofar as it may have a bearing on the case at bar, in part reads:

"If the degree or duration of disability resulting from an accident is increased or prolonged because of a pre-existing injury or infirmity the employer shall be liable only for the additional disability resulting from such accident."

Claimant was treated by Dr. Jorgensen, M.D., at Pocatello, because of his wrenched back industrially sustained June 5, 1958. The doctor testified at the hearing, looking at the matter retrospectively, that claimant suffered a partial permanent disability which progressed from the time the doctor first treated claimant during June 1958, to the time of examination of claimant September 24, 1959. While the doctor was unable to diagnose a herniated disc on the occasion of his examination during September, 1959, he was of the opinion that

claimant then had a permanent partial disability. He testified:

"A. * * * As far as his permanent partial—if I had to rate it out and say whether he had it or not, I would probably have to say that he had a partial disability from the 1958 incident anyway, from then on."

The doctor grounded his opinion, that claimant suffered a partial permanent disability, upon limitations of motions of the back and in performing work, which disability, in his opinion, would not be increased by laminectomy. His testimony then appears:

"Q. Would you have an opinion as to the percentage of partial disability rating Mr. Clark would have had after your 1959 examination, if you were rating him for permanent disability?

\* \* \* \* \* \*

"A. Yes. I think this could probably be about 5% or 10% of the leg at the hip."

Such disability, in the doctor's opinion, was probably present in September, 1959. The rating was primarily based on the fact that claimant was "going to have to avoid a heavy type of work" from then on because of a "weak back."

The Board awarded claimant specific indemnity for his partial permanent disability suffered, residual of both industrial injuries, comparable to 10% loss of one leg at the hip, which the Board apportioned between the two employers, i. e., 5% to each. The portion of the award, so apportioned against appellants, is amply supported by the evidence to which we refer.

Claimant continued to suffer pains and aches in his low back after the September 24, 1959, examination by Dr. Jorgensen, and at various times sought treatment therefor. After his industrial accident of April 8, 1960, he again sought treatment, this time by an osteopathic physician, from April 16 to June 17, 1960.

On July 9, 1960, claimant consulted Dr. Barnard, a neuro-surgeon, complaining of low back pain, more marked on the right, with bilateral sciatic pains, also more marked on the right. Myelography on July 28, 1960, revealed evidence of herniation of the intervertebral disc between the fifth and sixth lumbar vertebrae for which he was operated.

Evidence that the herniated intervertebral disc antedated the last industrial accidental injury of April 8, 1960, is shown by the testimony of the neuro-surgeon, who performed the laminectomy. After testifying that x-rays alone would not have revealed a disc injury, assuming such had been precipitated by claimant's first industrial injury of June 5, 1958, Dr. Barnard then gave his opinion as to the time when the herniation originated, indicated by the conditions

which he found upon operative procedure; in that respect he testified:

"A. * * * It takes a certain length of time, I think, to form fairly strong adhesions between a herniated disc and the surrounding structure which would suggest that it had been there for some time.

"Q. Were those adhesions present at the time of your surgery on August 8, 1960?

"A. Yes, they were. * * * a lot longer than a few months.

* * * * * *

"Q. In your opinion, would this disc condition have been present prior to April of 1960 at the time he was working for Bryce Hacking?

"A. Yes, I think so.

"Q. In your opinion, was this condition precipitated by the injury sustained in June of 1958?

"A. I would say this is the most significant injury he had to his back up to that time, and it was the first time he had ever had sciatic pain, so obviously the disc was injured back in 1958.

"Q. Is the tendency of a disc to gradually deteriorate once the injury has occurred?

* * * * * *

"A. * * * For the most part I feel that it [the disc] tends to gradual-ly deteriorate. It is a degenerative condition and tends to worsen with wear and tear with motions of the back, gradually."

■ The record, to which we refer, fully sustains the Board's findings concerning the causative and the exacerbating factors of claimant's herniated disc, as related to both industrial injuries.

Upon recovery from operative procedure claimant's residual disability had not increased from that as testified to by Dr. Jorgensen, as existent prior to claimant's last industrial injury of April 8, 1960, i. e., in excess of 10% as compared to the loss of one leg at the hip, being also the residual to which Dr. Barnard testified as existent after the laminectomy.

The record thus justified apportionment of the award, and is sufficient to sustain the portion of the award of compensation in favor of claimant apportioned against appellants for both total temporary disability and specific indemnity benefits.

The Board apportioned the hospital, surgical and kindred expenses, one-third to each employer. The remaining one-third the Board apportioned to claimant himself, finding that it related to the back infirmity which claimant sustained during his military service. The evidence, in our opinion, also sustains that apportionment.

■ Where expert, scientific and professional skill is required to determine the

cause, origin, and extent of a disability, proof thereof must be by skilled, professional witnesses. Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775; Laird v. State Highway Department, 80 Idaho 12, 323 P.2d 1079.

■ The Industrial Accident Board, specializing in the hearing of industrial accident cases, must be presumed by its experience to be able to judge the causative factors in a particular case. Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Kernaghan v. Sunshine Mining Co., 73 Idaho 106, 245 P.2d 806. The Board must be allowed a degree of latitude in making the apportionment. Harris v. Bechtel Corporation, 74 Idaho 308, 261 P.2d 818.

■ The Industrial Accident Board is authorized and required to find the causes of disability if attributable to more than one factor and to apportion the disability accordingly. This may require apportionment between an industrial injury and a preexisting injury or infirmity, as well as between successive industrial injuries; and such includes apportionment of hospital, medical and kindred expenses. I.C. § 72–323; Cole v. Fruitland Canning Co., 64 Idaho 505, 134 P.2d 603; Oliver v. Potlatch Forests, 73 Idaho 45, 245 P.2d 775; Harris v. Bechtel Corporation, 74 Idaho 308, 261 P.2d 818; Beard v. Post Company, 82 Idaho 38, 348 P.2d 939; Lindskog v. Rosebud Mines, Inc., ante, p. 160, 369 P.2d 580;

Andrus v. Boise Fruit & Produce Company, ante, p. 245, 371 P.2d 256.

■ The findings of the Industrial Accident Board when supported by competent and substantial evidence will not be disturbed on appeal. In Re Linzy, 79 Idaho 514, 322 P.2d 330.

The award of the Industrial Accident Board, as apportioned against appellants Brennan Construction Company and its surety, is affirmed. Costs to respondents.

TAYLOR, KNUDSON, McQUADE and McFADDEN, JJ., concur.